1  Bingham McCutchen LLP
   GREGORY LIPPETZ (SBN 154228)
2  Three Embarcadero Center
   San Francisco, CA  94111-4067
3  Telephone:  (415) 393-2000
   Facsimile:  (415) 393-2286
4  gregory.lippetz@bingham.com

5  Bingham McCutchen LLP
   RICHARD S. TAFFET *Pro Hac Vice*
6  (NY SBN 1721182)
   399 Park Avenue
7  New York, NY  10022-4689
   Telephone:  (212) 705-7000
8  Facsimile:  (212) 752-5378
   richard.taffet@bingham.com
9
   Bingham McCutchen LLP
10 ROBERT C. BERTIN *Pro Hac Vice*
   (VA Bar No. 42,478)
11 2020 K Street, NW
   Washington, DC 20006
12 Telephone: (202) 427-4126
   Facsimile (202) 373-6413
13 r.bertin@bingham.com

14 Attorneys for Plaintiff/Counterdefendant
   SANDISK CORPORATION

15

16              UNITED STATES DISTRICT COURT

17             NORTHERN DISTRICT OF CALIFORNIA

18                    SAN JOSE DIVISION

19

| | |
|---|---|
| 20  SANDISK CORPORATION, | Case No.:  C 07 03618 JF |
| 21              Plaintiff, | PLAINTIFF/COUNTERDEFENDANT SANDISK CORPORATION'S MOTION FOR SUMMARY JUDGMENT |
| 22  vs. | |
| 23  LUCENT TECHNOLOGIES INC. and ALCATEL-LUCENT, S.A., | Date:        November 30, 2007<br>Time:        9:00 a.m.<br>Location:    Courtroom 3 |
| 24              Defendants. | |
| 25 | |
| 26  AND RELATED COUNTERCLAIM | |
| 27 | |

28

A/72262796.4                                          C 07-03618 JF

PLAINTIFF/COUNTERDEFENDANT SANDISK'S MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

Page

I. NOTICE OF MOTION AND MOTION .......... 1

II. RELIEF SOUGHT .......... 1

III. STATEMENT OF ISSUES TO BE DECIDED .......... 1

1. Is SanDisk entitled to a declaration that it is not liable for direct or indirect infringement of the '457 or '080 patents? .......... 1

2. Is SanDisk entitled to a declaration that it is licensed to practice the '080 patent? .......... 1

IV. INTRODUCTION .......... 2

V. STATEMENT OF UNDISPUTED FACTS .......... 3

A. The Parties .......... 3

B. The Patents-In-Suit .......... 3

C. SanDisk's Accused Products .......... 5

D. Use Of SanDisk Players With Other Manufacturer's Encoding Software .......... 7

E. SanDisk's License To The Fraunhofer Patents .......... 7

F. Procedural History Of Litigation and Judgments Involving The Patents .......... 8

1. The Microsoft Case .......... 8

2. The Dolby Case .......... 9

G. Lucent's Assertion Of The Patents Against SanDisk .......... 10

VI. ARGUMENT .......... 11

A. This Court Has Subject Matter Jurisdiction Over SanDisk's Claims .......... 11

B. Summary Judgment Is Appropriate .......... 11

C. SanDisk Is Entitled To A Declaration That It Does Not Directly Infringe Either Of The Patents .......... 13

1. Each Independent Claim Requires Encoding .......... 14

2. SanDisk's Players Do Not Encode .......... 18

3. SanDisk Is Licensed Under The '080 Patent .......... 18

D. SanDisk Is Entitled To A Declaration That It Does Not Indirectly Infringe Either Of The Patents .......... 18

1. SanDisk Is Not Liable For Indirect Infringement Because Lucent Cannot Prove Any Direct Infringement .......... 19

2. SanDisk Is Not Liable For Contributorily Infringing Either Patent .......... 20

3. The Amended Judgment Makes Clear That Lucent Will Be Unable To Prove The Requisite Intent For Inducing Infringement .......... 23

VII. CONCLUSION .......... 24

A/72262796.4

1              TABLE OF AUTHORITIES

2    <u>Cases</u>                                                              <u>Page</u>

3
     Cases
4
5    *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................... 11, 12, 20

6    *Apple Computer Inc., v. Articulate Sys. Inc.*, 991 F. Supp. 1189 (N.D. Cal. 1997)..................... 19

7    *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336 (1961).................................. 19

8    *Bai v. L&L Wings, Inc.*, 160 F.3d 1350 (Fed. Cir. 1998)..................................................... 13

9    *C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.,* 911 F.2d 670 (Fed. Cir.
         1990) ..................................................................................................................... 19, 22

10   *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................... 11

11   *Cole v. Kimberly-Clark Corp.*, 102 F.3d 524 (Fed. Cir. 1996).......................................... 11

12   *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448 (Fed. Cir. 1998) ................................... 14

13   *Data General Corp. v. Johnson*, 78 F.3d 1556 (Fed. Cir. 1996) ...................................... 17

14   *Dolby Laboratories, Inc. v. Lucent Technologies, Inc.*, C 01-20709 (RS) ............................ 2, 17

15   *DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293 (Fed. Cir. 2006)................................ 23

16   *Dynacore Holdings Corp. v. U.S. Philips Corp.,* 363 F.3d 1263 (Fed Cir. 2004)...................... 20

17   *Finnsugar Bioproducts, Inc. v. Raytheon Eng'rs & Constructors, Inc.,* No. 97-C-
         8746, 1998 WL 703463 (E.D. Ill. Sep. 30, 1998)............................................................. 19
18
     *Freedman Seating Co. v. American Seating Co.*, 420 F.3d 1350 (Fed. Cir. 2005)...................... 14
19
     *Graver Tank & Mfg. Co. Inc. v. Linde Air Prods. Co.*, 339 U.S. 605 (1950)............................. 14
20
     *Haney v. Timesavers, Inc.* No. 92-270-FR, 1993 WL 415706, at (D. Ore. Oct. 13,
21       1993) ..................................................................................................................... 14

22   *Hernandez v. Spacelabs Med., Inc.*, 343 F.3d 1107 (9th Cir. 2003)........................................... 12

23   *Hodosh v. Block Drug Co.,* 833 F.2d 1575 (Fed. Cir. 1987) ..................................................... 21

24   *Huron Holding Corp. v. Lincoln Mine Operating Co.*, 312 U.S. 183 (1941)............................. 13

25   *Kao Corp. v. Unilever U.S., Inc.,* 441 F.3d 963 (Fed. Cir. 2006) .............................................. 14

26   *Lockheed Martin Corp. v. Space Sys./Loral, Inc.*, 324 F.3d 1308 (Fed. Cir. 2003) ................... 14

27   *Lucent Technologies, Inc. v. Gateway, Inc.*, Case No. 3:02-cv-02060 (RWB) ................... passim

28   *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996)............................................... 14, 15

/72262796.4

                                                    i

TABLE OF AUTHORITIES
(continued)

Cases                                                                                           Page

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ................................... 12

*MedImmune, Inc. v. Genentech, Inc.*, 127 S. Ct. 764 (2007) ...................................................... 11

*Minn. Min. & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294 (Fed. Cir. 2002) ................................ 19

*Pharmacia & Upjohn Co. v. Mylan Pharms., Inc.*, 170 F.3d 1373 (Fed. Cir. 1999) ............. 12, 13

*Philips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) ........................................................ 14, 15

*Polysius Corp. v. Fuller Co.*, 709 F. Supp. 560 (E.D. Pa. 1989) ................................................. 21

*SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372 (Fed. Cir. 2007) ............................ 11

*Shaw v Kahn et al.*, 56 F.3d 1128 (9th Cir. 1995) ....................................................................... 12

*Smith & Nephew, Inc. v. Arthrex, Inc.*, No. CV 04-29-MO, 2007 WL 1114229 (D.
    Or. April 12, 2007) ................................................................................................................. 17

*Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417 (1984) ............................ 20

*Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316 (Fed. Cir. 2001) ...................... 12

*TV Interactive Data Corp. v. Microsoft Corp.*, No. C 02-02385 JSW, 2005 WL
    1910929 (N.D. Cal. Aug. 10, 2005) ...................................................................................... 21

*Universal Elecs., Inc. v. Zenith Elecs. Corp.*, 846 F. Supp. 641 (N.D. Ill. 1994) ...................... 21

*Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996) ....................................... 14

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997) ..................................... 14

*Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348 (Fed. Cir. 2003) ...................................... 23

*Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660 (Fed. Cir. 1988) .............................................. 23


Statutes

35 U.S.C. § 271(c) ......................................................................................................................... 19

Fed. R. Civ. P. 56 .................................................................................................................... 11, 12

V/72262796.4

I.      **NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD, PLEASE TAKE

NOTICE THAT on November 30, 2007, at 9:00 a.m., or as soon thereafter as the matter may be

heard, in Courtroom 3 of the United States District Court for the Northern District of California,

San Jose Division, located at 280 South 1st Street, San Jose, California,

plaintiff/counterdefendant SanDisk Corporation will and hereby does move this Court for an

order granting plaintiff summary judgment that it does not infringe, directly or indirectly, U.S.

Patent Nos. 5,341,457 ("the '457 patent") and RE39,080 ("the '080 patent") (collectively, the

"patents-in-suit"), and that it is licensed to practice the '080 patent.

This Motion is made on the grounds that there are no genuine issues of material

fact that: 1) SanDisk's accused products do not practice every element of the claims of the

patents-in-suit, 2) SanDisk is not liable for indirect infringement of the patents-in-suit, and 3)

SanDisk has a license to practice the '080 patent.  This Motion is based on this Notice of Motion,

the Memorandum of Points and Authorities below, the accompanying supporting declarations,

the pleadings, files, and records in this action, and on all such other evidence and argument as

may be presented by plaintiff at the hearing on this Motion.

II.     **RELIEF SOUGHT**

Plaintiff/counterdefendant SanDisk Corporation ("SanDisk") moves this Court for

summary judgment and an Order: 1) declaring that SanDisk does not infringe the '457 patent, 2)

declaring that SanDisk does not infringe the '080 patent, 3) declaring that SanDisk is licensed to

practice the '080 patent, and 4) entering judgment in favor of SanDisk, and against defendants

Lucent Technologies, Inc. ("Lucent Technologies") and Alcatel-Lucent NA ("Alcatel-Lucent")

(collectively, "Lucent").

III.    **STATEMENT OF ISSUES TO BE DECIDED**

SanDisk requests that the court decide the following issues:

1.      Is SanDisk entitled to a declaration that it is not liable for direct or indirect
        infringement of the '457 or '080 patents?

2.      Is SanDisk entitled to a declaration that it is licensed to practice the '080
        patent?

1    **IV.    INTRODUCTION**

2              This case represents at least the third litigation involving Lucent's assertion of the

3    patents-in-suit.  As this Court is well aware, in April 2005, it granted summary judgment of

4    non-infringement in favor of the declaratory judgment plaintiffs in *Dolby Laboratories, Inc. v.*

5    *Lucent Technologies, Inc.*, C 01-20709 (RS) (the "*Dolby* case").  *See* Declaration of Gregory L.

6    Lippetz ("Lippetz Decl."), Ex. A.  That decision was affirmed by the Federal Circuit.  *See*

7    Lippetz Decl., Ex. B.  More recently, on August 6, 2007, the federal district court for the

8    Southern District of California, in *Lucent Technologies, Inc. v. Gateway, Inc.*, Case No. 3:02-cv-

9    02060 (RWB) (the "*Microsoft* case"), overturned a jury verdict and granted judgment as a matter

10   of law that Microsoft did not infringe the patents-in-suit and that Microsoft was licensed under

11   the '080 patent.  *See* Lippetz Decl., Ex. G.  Lucent has recently filed papers with this Court in

12   which they concede that the judgment in the *Microsoft* case precludes many, if not all, potential

13   claims of infringement against SanDisk.

14             This case equally requires judgment against Lucent, particularly in light of the

15   prior rulings involving the very same patents.  Lucent has asserted the two patents-in-suit against

16   SanDisk in connection with certain of SanDisk's portable audio products that allow consumers to

17   store and listen to music and other audio files in the MP3 format.  SanDisk, however, as a matter

18   of law, does not infringe either patent.

19             *First*, SanDisk is entitled to a declaration that it does not directly infringe either

20   patent because its products do not encode audio files, as is required by all of the claims of the

21   patents.

22             *Second*, SanDisk is entitled to a declaration that it does not indirectly infringe the

23   patents because (a) Lucent cannot prove any direct infringement of the patents-in-suit, as is

24   required to establish indirect infringement; (b) SanDisk's products are staple articles of

25   commerce and are capable of substantial non-infringing uses, including using audio files

26   encoded by non-patented techniques; and (c) proof of the requisite intent to establish inducement

27   of infringement cannot be offered.

28

*Third*, as was held in the *Microsoft* case, SanDisk is entitled to a declaration that it is a licensee of the '080 patent from a co-owner of that patent, and Lucent may not assert that patent against SanDisk.  This further eliminates any possibility that Lucent can show either direct or indirect infringement of the '080 patent by SanDisk.

## V.      STATEMENT OF UNDISPUTED FACTS

### A.      The Parties

Plaintiff/counterdefendant SanDisk is headquartered in Milpitas, California, and is in the business of designing, manufacturing and marketing data storage products using high density flash memory and controller technology.  Complaint, ¶¶ 1, 7.  As described more fully below, SanDisk also manufactures, markets and sells digital audio players that utilize its flash technology.  *Id.; see generally* Declaration of Eric Bone ("Bone Decl.").

Lucent Technologies maintains its headquarters in Murray Hill, New Jersey.  Complaint, ¶ 8.  Among other things, it purports to be the owner of the '457 and '080 patents.  Complaint, ¶ 14.  Alcatel-Lucent is a French company that resulted from the merger of Lucent Technologies and Alcatel SA, a French telecommunications equipment supplier.  Lucent Technologies is presently a wholly-owned subsidiary of Alcatel-Lucent.  Complaint, ¶ 9.

### B.      The Patents-In-Suit

The patents-in-suit both claim methods of encoding audio signals into digital audio files that are compatible with the MP3 standards.  The '457 patent claims an improvement on data compression techniques to compress digital audio.  The '457 patent describes a method of exploiting the tone masking properties of the human ear by determining a tonality value and using that value as a basis for a masking threshold used to encode an audio signal into the compressed format.  Lippetz Decl., Ex. I at 1:21-54.

This Court described the encoding techniques claimed in the '457 patent as follows:

> The '457 patent . . . . describes a method for implementing a "noise masking threshold" that varies depending on the audio signal's "tonality value."  Audio signals are characterized based on the extent to which they are composed of "noise-like" and "tone-like" qualities.  A noise masking threshold is determined using the tonality value.  Compression is achieved by retaining audio signals

1
2
3

above that threshold and by using the threshold to determine the
accuracy of the coding of those retained signals. Signals close to
the threshold are coded with less accuracy (and concomitantly,
more quantizing noise) and signals farther above the threshold are
coded with greater accuracy.

4    Lippetz Decl., Ex. K at 2:12-22.

5    All of the claims of the '457 patent include four steps to encode audio signals in

6    accordance with the principles above. Each of the independent claims (1, 10, 13 and 17) recite

7    "generating at least one tonality value" and further claim using the "tonality value" in

8    "generating . . . a noise masking threshold." Lippetz Decl., Ex. I at elements (b) and (c) of

9    independent claims 1 and 17 and elements (b)(2) and (b)(3) of independent claims 10 and 13.

10   These two claimed steps are fundamental to the encoding process described by this Court in

11   *Dolby*, and are performed by the coders[1] shown in block diagram form, respectively, in Figures 1

12   and 2 of the '457 patent.[2] Figure 1, reproduced below, illustrates digital stereo signals entering

13   the coder and leaving the coder as an encoded output bitstream. *See Id.* at Figure 1.

14



FIG. 1

23

_____

24   [1] The '457 and '080 patents use the terms "coder" and "coding" interchangeably with "encoder"
25   and "encoding" when referring to encoding an audio signal. *Compare id.* at title ("Perceptual
     Coding of Audio Signals") with *id.* at 2:44-45 ("the Audio Engineering Society Standard Format
26   for signal encoding is used"). *And, compare* '080 patent at title ("Perceptual Encoder/Decoder")
     with '080 patent at 2:12 ("Perceptual coding").

27   [2] Figure 1 depicts a stereo coder and Figure 2 a monaural coder. *Id.* at 2:6-9.

28

1    The '080 patent is a reissue of U.S. Patent No. 5,627,938 ("the '938 patent"),

2   which incorporates the disclosure of the '457 patent by reference.  Lippetz Decl., Ex. J at 4:57 -

3   59.  As a result of the reissue, claim 2 from the '938 patent was cancelled and no new claims

4   were added.  *Id.* at 24:59-60; Lippetz Decl., Ex. H at 21.  This Court described the methods

5   claimed in the '080 (then the '938) as follows:

6        "The '938 patent . . . generally describes a similar method [to the '457
         patent].  However, it includes a second basis for data reduction "the
         absolute hearing threshold."  This threshold is an empirically
7        determined value below which certain sounds cannot be heard.
         Because such signals cannot be heard, data corresponding to them
8        can be eliminated, thus reducing the digital information required to
         transmit or store the auditory signal.  The '938 patent also claims an
9        iterative process to reduce the required bit rate. . . .  Finally, the '938
         patent claims a decoder, which may convert the compressed data into
10       a "time domain signal."

11    Lippetz Decl., Ex. K at 2-3.

12    Like the '457 patent, all claims of the '080 patent explicitly require four encoding

13   steps.  Claim 1,  recites: "[a] method of **coding** an audio signal . . ." followed by the four coding

14   steps (a) - (d).  *Id.* at 24:44-58 (emphasis added).

15    The last independent claim of the '080 patent, claim 4, claims a decoder that must

16   include two elements: "(a) means for receiving the set of coefficients, the set of coefficients

17   having been encoded by . . . and (b) means for converting."  *Id.* at 24:66-26:8.  This claim

18   requires the received coefficients to be encoded by steps (a)(1) - (a)(iv), which exactly

19   correspond to the encoding steps (a) - (d) of the coding method of claim 1.  *Compare id.* at 25:3-

20   26:6 to *id.* at 24:45-58; *see infra at* Section VI(C)(1).  Thus, in the *Microsoft* case, Lucent

21   conceded, to overcome prior art and argue validity of the '080 patent, that claim 4 of the '080

22   patent "incorporates each step of claim 1 [the encoding method]."  Lippetz Decl., Ex. H at 21.

23    **C.    SanDisk's Accused Products**

24    Lucent has asserted that SanDisk requires a license under the patents-in-suit in

25   connection with approximately twenty-five SanDisk audio products.  Lippetz Decl., Exs. P and

26   Q.  These products are portable devices that receive, store and play back music that has

27

28

1   previously been encoded into one of several compatible compressed music formats, namely

2   MP3,[3] WMA[4] and secure WMA.[5]  Bone Decl. at ¶¶ 3–7.  None of SanDisk's products, however,

3   encode or "rip" audio files.  *Id.* at ¶ 3.  Rather, SanDisk players can only store and play files that

4   have already been encoded in MP3, WMA or secure WMA formats.  *Id.* at ¶¶ 3-7.

5           Accordingly, for a consumer to use a SanDisk audio player, the user must first

6   transfer an audio file previously encoded into a compatible format onto a SanDisk player.  *Id* at

7   ¶¶ 8-9.  This can be done using a computer.  *Id.*  Once properly encoded audio (music or

8   otherwise) is stored on the consumer's computer, it can then be transferred to a SanDisk player

9   over a USB connection.  *Id.*  The encoded audio files are then stored in the SanDisk player in

10  flash memory for later decoding and playback.  *Id.*

11          Consumers typically use media software on their computers to acquire and store

12  music and other audio files encoded in MP3, WMA, secure WMA and other audio formats.  *Id.*

13  at ¶¶ 9-12.  This software also allows users to play music and transfer music to devices such as

14  SanDisk players.  *Id.*  Several companies offer media software, including Microsoft's Windows

15  Media Player ("WMP"), as well as Real Networks' Rhapsody, Yahoo! Music Jukebox and

16  Apple's ITunes.  *Id.*  Users can also acquire new music and audio files by purchasing them from

17  on-line stores accessible through the Internet.  *Id.*

18          Certain media software programs also allow customers to encode or "rip" music

19  from music CDs into a compressed music format such as MP3, WMA or secure WMA.  *Id.* at

20  ¶ 11.  Windows Media Player includes separate encoders for "ripping" or encoding audio from a

21  music CD into the MP3, WMA or Secure WMA formats.  *Id.*  Other media encoding software

22  _____

23  [3] MP3 is an audio format defined in international standards ISO/IEC 1172-3 and 13818.  Bone
    Decl. at ¶ 5.

24  [4] WMA is a compressed music format proprietary to Microsoft that involves different coding
25  than MP3.  Bone Decl. at ¶ 6.

26  [5] Secure WMA is a version of WMA with security features, namely encrypted files and
    encryption keys.  The keys are required to accompany the secure WMA encoded audio file in
27  order to play the file.  Bone Decl. at ¶ 6.

28

1   such as Rhapsody, Yahoo! Music Jukebox and ITunes also allow users to encode audio files. *Id*.

2   Unless and until music is encoded into the MP3, WMA or secure WMA format using an

3   encoding program, SanDisk players cannot play the music. *Id* at ¶ 3.

4        **D.**     **Use Of SanDisk Players With Other Manufacturer's Encoding Software**

5        Because SanDisk's players are capable of playing music files created by any

6   software that encodes into standard file formats, SanDisk does not specify which format of files a

7   customer must use. *Id*. at ¶¶13-15. SanDisk does encourage its customers to use media software

8   such as Windows Media Player, Rhapsody or Yahoo! Music Jukebox. *Id*. SanDisk has also

9   provided instructions to customers as to how to use WMP, Rhapsody and Yahoo! Music Jukebox

10  to encode or "rip" music files from compact discs. *Id*. at ¶¶ 13-14. However, SanDisk never

11  specifies which file format (i.e., MP3, WMA or secure WMA) its customers should use. *Id*.

12       **E.**     **SanDisk's License To The Fraunhofer Patents**

13       Fraunhofer is a research institute based in Germany that was involved in

14  developing the MP3 coding standards. Lippetz. Decl., Ex. L. Fraunhofer owns numerous

15  patents related to audio encoding, including patents related to the MP3 coding standards.

16  Fraunhofer entered into an agreement with Thomson under which Thomson acts as "the

17  licensing representative of MP3 patents and software of the Fraunhofer Institute." Lippetz Decl.,

18  Ex. M. According to Thomson's website, hundreds of companies worldwide have entered into

19  licenses with Thomson for the Fraunhofer MP3 patents. *See*

20  http://www.mp3licensing.com/licensees/index.asp. In early 2006, SanDisk entered into a patent

21  license with Thomson for the Fraunhofer MP3 patents (the "SanDisk-Thomson License").

22  Declaration of Joe Novak ("Novak Decl."), Ex. A.[6] The SanDisk-Thomson License provides

23  that SanDisk has a license to "all patents or patent applications covering Mp3

24  FUNCTIONALITY which [Thomson] and/or [Thomson]'s AFFILIATES own during the term of

25  this AGREEMENT, or to which [Thomson] and/or [Thomson]'s AFFILIATES have obtained the

26  _____

27  [6] Confidential financial terms of the SanDisk-Thomson License immaterial to this motion have
    been redacted at Thomson's request.

28

1    sublicensing right from [Fraunhofer], . . . "  Novak Decl., Ex. A at Sections 2.2 and 1.8.[7]  As

2    discussed below, the court in *Microsoft* determined that the '080 patent is one of the MP3 patents

3    owned by Fraunhofer and covered by the Fraunhofer MP3 patents license agreements.

4        **F.**    **Procedural History Of Litigation and Judgments Involving The Patents**

5              **1.**    **The *Microsoft* Case**

6        In 2002 and 2003, Lucent filed patent infringement actions against various third

7    parties, including Dell, Inc. and Gateway Computers, in the Eastern District of Virginia.  In these

8    actions, Lucent alleged infringement of the '457 and '938 patents, among other patents.  Lippetz

9    Decl., Ex. D at 2.  Microsoft then sued Lucent in the United States District Court for the

10   Southern District of California for a declaration of non-infringement and invalidity in connection

11   with, *inter alia*, the '457 and '938 patents.  The '080 patent was substituted for the '938 patent

12   once the reissue was completed by the USPTO.  Lippetz Decl., Ex. F.  In July 2003, these cases

13   were consolidated in the Southern District of California as the *Microsoft* case.  Lucent

14   specifically claimed that Microsoft was liable for indirect infringement of claims 1, 3 and 4 of

15   the '080 patent and claims 1, 5 and 10 of the '457 patent through sales of certain versions of its

16   Windows Media Player software.  Lippetz Decl., Ex. C at 2.  In February 2007, a jury found that

17   Microsoft's Windows Media Player infringed certain claims of the '080 and '457 patents.  *Id.*

18   Partial final judgment was entered against Microsoft in the jury-recommended amount of

19   $769,028,351.00 plus costs of suit for each patent.  *Id.*

20       On August 6, 2007, the court reversed the jury verdict in its entirety as a matter of

21   law and issued its Amended Judgment in favor of Microsoft (the "Amended Judgment").

22   Lippetz Decl., Ex. G.

23       As to the '457 patent, the court stated: "As a matter of law, Lucent failed to prove

24   any direct infringement of claims 1, 5, and 10 of the '457 patent by Microsoft's Windows Media

25   _____

26   [7] The SanDisk-Thomson License also provided SanDisk with a release for past infringement.
     Novak Decl., Ex. A at Section 2.1.

27

28

1   Player 10 and Windows Media Player with the Cyberlink plug-in encoder, therefore Microsoft is

2   not liable for inducing infringement and contributory infringement either within or outside the

3   United States with respect to the '457 patent." *Id*. at 4.  The court based its decision on a finding

4   that there was no proof that the portion of the Windows Media Player software accused of

5   performing the patented methods, known as an HQ encoder, ever actually performed the

6   patented methods.  Lippetz Decl., Ex. C. at 14-20.  Since there was no direct infringement, the

7   court held that there could be no contributory infringement nor inducement.  *Id*. at 20.

8          As to the '080 patent, the court held that Microsoft is licensed under the patent,

9   and, therefore, does not infringe.  Lippetz Decl., Ex. G at 3-4.  The court stated:  "The defense of

10  license for the '080 patent is available to Microsoft and it is not liable for any infringement of the

11  '080 patent.  Therefore, as a matter of law, Microsoft's Windows Media Player 6.1 through 9, 10,

12  and 11 and Windows Media Player with the Cyberlink plug-in encoder do not infringe claims 1,

13  3, and 4 of the '080 patent by inducing infringement and contributory infringement either within

14  or outside the United States." *Id*.  "Additionally, because Fraunhofer is a co-owner of the '080

15  patent, and Microsoft has a license to the '080 patent from Fraunhofer, the defense of license for

16  the '080 patent also is available to Microsoft." *Id*. at 3.  The court based its decision on a finding

17  that the patent was jointly owned by Lucent and Fraunhofer.  Lippetz Decl., Ex. C at 10-13.  The

18  court ruled that the patent was subject to a joint development agreement between Lucent (then

19  AT&T) and Fraunhofer, which provided that the intellectual property arising from certain work

20  would be jointly owned.  *Id*. at 10-12.  Because Fraunhofer is a joint owner, and because

21  Microsoft has a license from Fraunhofer (through Thomson), Microsoft is licensed under the

22  '080 patent.  *Id*. at 14.  Thus, as a licensee, Microsoft does not infringe the '080 patent.  *Id*.

23          2.      **The *Dolby* Case**

24          In 2003, Dolby Laboratories and Dolby Laboratories Licensing Corporation

25  (collectively, "Dolby") filed suit against Lucent in the Northern District of California, seeking a

26  declaratory judgment of non-infringement and invalidity as to both the '457 and the '938 patents.

27  In April 2005, this Court granted Dolby's motion for summary judgment of non-infringement.

28  Lippetz Decl., Ex. A.  As to the '457 patent, the court based its decision on Lucent's inability to

1    prove that Dolby's AC-3 technology generates or uses a "tonality value" as required by the

2    patent.  *Id.* at 9.  As to the '938 patent, the court found that Lucent could not show that Dolby's

3    AC-3 technology uses an "absolute hearing threshold" as required by the patent.  *Id.* at 10.  On

4    August 8, 2007, the Court of Appeals for the Federal Circuit affirmed the district court's

5    decision.  Lippetz Decl., Ex. B.

6          **G.**     **Lucent's Assertion Of The Patents Against SanDisk**

7          On May 11, 2007, Lucent asserted the '457 and '080 patents against SanDisk.

8    Complaint ¶ 17; Lippetz Decl., Ex. P.  Specifically, Lucent identified twenty-four SanDisk

9    digital music players that Lucent alleged require a license of the patents.  *Id.*  These twenty-four

10   models comprise virtually all of the digital music players ever offered for sale by SanDisk.

11   Complaint ¶ 17.

12         On June 5, 2007, SanDisk inquired of Lucent if it was asserting infringement of

13   specific claims of the '457 and '080 patents, and, if so, to inform SanDisk so that SanDisk could

14   investigate the allegations.  *Id.* at ¶ 18; Lippetz Decl., Ex. Q.  On June 12, 2007, Lucent

15   identified specific claims of the '457 and '080 patents, and did so by referencing the Microsoft

16   litigation in which the '457 and '080 patents were asserted and held to be infringed.  Complaint at

17   ¶ 19; Lippetz Decl., Ex. Q.  Further, Lucent sought a meeting for the parties to review license

18   terms and conditions.  *Id.*  SanDisk has advised Lucent that its digital music players do not

19   infringe the '457 or '080 patents, and that, therefore, there is no need for SanDisk to obtain a

20   license from Lucent in connection with the patents in suit.  Complaint at ¶ 20.

21         On August 2, 2007, the parties filed a stipulation with the court in this action

22   pursuant to which Lucent stipulated to the jurisdiction of this Court.  Lippetz Decl., Ex. N.

23         On October 12, 2007, the defendants responded to SanDisk's Complaint.  Alcatel-

24   Lucent and Lucent answered the Complaint.  Lucent also asserted a counterclaim for

25   infringement of the '080 patent.  In its counterclaim, however, Lucent admits that there is a final

26   judgment - *i.e.,* the judgment in the Microsoft case - establishing that Lucent is only a joint

27   owner of the '080 patent and holding that it lacks standing to assert claims of infringement under

28   the '080 patent.  Counterclaim at ¶ 8.  Lucent nonetheless states that it "respectfully disagrees"

1   with the judgment, and asserts its claim for infringement against SanDisk.  *Id.*  On October 26,

2   2007, SanDisk filed a Motion to Dismiss Lucent's Counterclaims.  *See* SanDisk's Motion to

3   Dismiss.

4        Defendants have also filed a motion to dismiss, alleging that SanDisk's Complaint

5   should be dismissed without prejudice until the appeal of the judgment in the *Microsoft* case is

6   resolved.  *See* Defendants' Motion to Dismiss.  Because, as discussed below, the final judgment

7   in the *Microsoft* case is fully enforceable against Lucent now, SanDisk will be opposing

8   Defendants' motion.

9   **VI.    ARGUMENT**

10       **A.    This Court Has Subject Matter Jurisdiction Over SanDisk's Claims**

11       This action was initiated in response to Lucent's assertion of the patents-in-suit

12   against virtually all of SanDisk's digital musical players currently on the market.  This Court,

13   therefore, has subject matter jurisdiction to issue a declaratory judgment regarding the parties'

14   legal rights as they pertain to the patents-in-suit.  *See MedImmune, Inc. v. Genentech, Inc.*, 127

15   S. Ct. 764, 771 (2007).  Even in light of the Amended Judgment in *Microsoft*, this Court retains

16   such jurisdiction over this case.  *See SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372,

17   1381 (Fed. Cir. 2007).

18       **B.    Summary Judgment Is Appropriate**

19       Summary judgment is appropriate when there is no genuine issue of material fact

20   and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex*

21   *Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

22   (1986).  Thus, a court may grant summary judgment when no "reasonable jury could return a

23   verdict for the nonmoving party."  *Id.*

24       The issue of infringement is properly decided on summary judgment where no

25   genuine issue of material fact exists, particularly when no reasonable jury could find that every

26   limitation recited in the properly construed claim is found in the accused process or device.  *See*

27   *Cole v. Kimberly-Clark Corp.*, 102 F.3d 524, 532 (Fed. Cir. 1996), *cert. denied*, 522 U.S. 812

28   (1997).  "Summary judgment of noninfringement is appropriate where the patent owner's proof

1    is deficient in meeting an essential part of the legal standard for infringement, since such failure

2    will render all other facts immaterial." *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d

3    1316, 1323 (Fed. Cir. 2001).

4            Once the moving party meets its burden of demonstrating the absence of a

5    genuine issue of material fact, the burden shifts to the non-moving party to "set forth specific

6    facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at

7    256.  The factual dispute claimed by the non-moving party must be "material" and the dispute

8    over it "genuine." *Id.* at 248.  A "material" issue is one that affects the outcome of the suit; a

9    dispute is "genuine" only if it could reasonably be resolved in favor of either party. *Id.* at 255.

10   Unsupported allegations or conjecture are insufficient to raise a genuine issue of material fact.

11   *Id.* at 248; *see also Hernandez v. Spacelabs Med., Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).

12   Therefore, to defeat this summary judgment motion, Lucent "must do more than simply show

13   that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v.*

14   *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

15           This case is appropriate for summary judgment.  As discussed below, the relevant

16   claim language for both patents-in-suit indisputably requires encoding of audio files, and it is

17   indisputable that SanDisk's products do not perform such a step.  Further, no facts can be

18   presented by Lucent that would establish indirect infringement, particularly in light of the

19   Amended Judgment in the *Microsoft* case.  Finally, there can be no dispute that SanDisk is

20   licensed to practice the '080 patent.

21           Moreover, summary judgment is particularly appropriate in this case in favor of

22   SanDisk on issues that Lucent already litigated, and lost, in the *Microsoft* case.  Where a party

23   has had a full and fair opportunity to litigate issues in one case, summary judgment in another

24   case on those same issues is appropriate, and the party that had unsuccessfully litigated the issues

25   previously - here Lucent - is collaterally estopped from relitigating those issues in the subsequent

26   suit. *Pharmacia & Upjohn Co. v. Mylan Pharms., Inc.*, 170 F.3d 1373, 1379 (Fed. Cir. 1999);

27   *Shaw v. Kahn et al.*, 56 F.3d 1128, 1131 (9th Cir. 1995) (collateral estoppel "prevents relitigation

28   of issues actually litigated and necessarily decided, after a full and fair opportunity for litigation,

1   in a prior proceeding."). Lucent effectively concedes that issues in this case are identical to those

2   addressed in the *Microsoft* judgment:

- " "[T]he Federal circuit will review a ruling that -- if undisturbed -- would deprive Lucent of prudential standing even to pursue a claim for infringement of one of the patents-in-suit before this Court." Defendants' Motion to Dismiss at 2:8-10;

- "[T]the issues on appeal in the Microsoft litigation largely overlap with -- and may be dispositive of -- the issues raised by SanDisk's declaratory judgment complaint. . ." *Id.* at 3:24-25.

8   As such, summary judgment in favor of SanDisk on these issues is warranted.

9           Nor can there be any issue that the *Microsoft* Amended Judgment constitutes a

10  final, enforceable judgment, that can be used collaterally against Lucent for purposes of this

11  motion. Lucent concedes this as well: "After SanDisk filed its declaratory judgment complaint,

12  the district court issued final judgment in the *Microsoft* action based on post-trial motion

13  practice." Defendants' Motion to Dismiss at 3:10-11. Lucent wrongfully asserts, however, that

14  because it has appealed the judgment, no action should be taken pending resolution of the appeal.

15  The law is to the contrary. In a federal court proceeding, the pendency of an appeal does not

16  affect the enforceability of a trial court's judgment. *See Huron Holding Corp. v. Lincoln Mine*

17  *Operating Co.*, 312 U.S. 183, 189 (1941) ("in the federal courts the general rule has long been

18  recognized that while appeal with proper supersedeas stays execution of the judgment, it does

19  not - until and unless reversed - detract from its decisiveness and finality"); *see also Pharmacia*,

20  170 F.3d at 1381 ("The law is well settled that the pendency of an appeal has no effect on the

21  finality or binding effect of a trial court's holding."). Unless and until the *Microsoft* judgment is

22  overturned, it can and should be used against Lucent to resolve this action.

23

24  **C.     SanDisk Is Entitled To A Declaration That It Does Not Directly Infringe Either Of The Patents**

25          Literal infringement occurs where each and every limitation of at least one claim

26  of the patent is found exactly in the accused product. *Bai v. L&L Wings, Inc.*, 160 F.3d 1350,

27  1353 (Fed. Cir. 1998). The patent owner has the burden of proving literal infringement and must

28

1  meet its burden by a preponderance of the evidence. *Kao Corp. v. Unilever U.S., Inc.,* 441 F.3d

2  963, 972 (Fed. Cir. 2006).

3        A claim can also be infringed under the doctrine of equivalents.  As the Supreme

4  Court has described the doctrine of equivalents, "a product or process that does not literally

5  infringe upon the express terms of a patent may nonetheless be found to infringe if there is

6  'equivalence' between the elements of the accused product or process and the elements of the

7  patented invention." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997).

8  The doctrine of equivalents requires an element-by-element comparison of the accused product

9  and the claim. *Id.*  One test for equivalence is whether or not an element accused of substituting

10  for a claimed element literally missing in the accused product "performs substantially the same

11  function in substantially the same way to obtain substantially the same result." *Graver Tank &*

12  *Mfg. Co. Inc. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950), *superseded on other grounds by*

13  *Haney v. Timesavers, Inc.* No. 92-270-FR, 1993 WL 415706, at *4 (D. Ore. Oct. 13, 1993).  But

14  a theory of equivalents that vitiates a claim limitation is improper as a matter of law. *Freedman*

15  *Seating Co. v. American Seating Co.*, 420 F.3d 1350, 1358 (Fed. Cir. 2005) (citation omitted).

16        **1.**    **Each Independent Claim Requires Encoding**

17        Determination of patent infringement is a two-step process. *Lockheed Martin*

18  *Corp. v. Space Sys./Loral, Inc.*, 324 F.3d 1308, 1318 (Fed. Cir. 2003).  First, the Court construes

19  the patent claims to determine their proper scope. *Id.*; *Markman v. Westview Instruments, Inc.*,

20  517 U.S. 370, 372 (1996).  Second, the properly construed claims are compared to the allegedly

21  infringing device. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998).

22        "It is a bedrock principle of patent law that the claims of a patent define the

23  invention to which the patentee is entitled the right to exclude." *Philips v. AWH Corp.*, 415 F.3d

24  1303, 1312 (Fed. Cir. 2005) (*en banc*) (citation and internal quotations omitted); *see also*

25  *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) ("[W]e look to the

26  words of the claims themselves . . . to define the scope of the patented invention.").  However,

27  "claims 'must be read in view of the specification, of which they are a part,'" *Philips*, 415 F.3d at

28  1315 (*quoting Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (*en*

1    *banc*), *aff'd*, 517 U.S. 370 (1996)).  When construing claims, the patent itself provides the

2    context for the claims and is preferable to dictionaries or other evidence extrinsic to the patent.

3    *Philips*, 415 F.3d at 1313-14.

4                As described above, each of the claims of the '457 and '080 patents plainly require

5    encoding an audio signal.  *See supra* at Section V(B).  Each independent claim of the '457 patent,

6    for example, includes at least the following four encoding steps:

7

| Encoding step | Claim element |
|---|---|
| "grouping . . . frequency coefficients" | Element (a) of claims 1, 17<br>Element (b)(1) of claims 10, 13 |
| "generating at least one tonality value" | Element (b) of claims 1, 17<br>Element (b)(2) of claims 10, 13 |
| "generating . . . [a] noise masking threshold" | Element (c) of claims 1, 17<br>Element (b)(3) of claims 10, 13 |
| "quantizing at least one frequency coefficient" | Element (d) of claims 1, 17<br>Element (b)(4) of claims 10, 13 |

14   Lippetz Decl., Ex. I.

15               Each of these encoding steps is performed by a "coder" that performs encoding.[8]

16   A stereo coder is shown in block diagram form in Figure 1.  *See supra* at Section V(B).  That

17   encoder receives digital audio signals from a signal source 11, and sends an encoded output

18   bitstream.  The discrete blocks within the coder shown in Figure 1 perform these encoding steps.

19   In this regard, the grouping of frequency coefficients (the first encoding step identified above) is

20   performed by the FFT blocks 17 and 18.  Lippetz Decl., Ex. I at Figure 1 and 6:55-57 (describing

21   the groups of frequency coefficients as blocks of data output by the FFT block).  The tonality

22   value (the second encoding step identified above) is generated by the tonality measurement block

23   27.  Lippetz Decl., Ex. I at Figure 1.  The step of generating a noise masking threshold (the third

24   encoding step identified above) is performed by the threshold calculation block 21, which is

25   shown in Figure 1 by the arrow labeled "*a*" to receive the tonality value from the tonality

26   _____

27   [8] Coding is the process of encoding the audio signal, and the patents use the two terms
     interchangeably.  *See supra* note 1.

28

PLAINTIFF SANDISK'S MOTION FOR SUMMARY JUDGMENT

1   measurement block 27 and to output "thresholds."  The specification also refers to Figure 1 and

2   describes the threshold calculation block 21 as calculating the masking threshold using the

3   tonality measure.  Lippetz Decl., Ex. I at 3:30-45.  Finally, the quantizing step (the fourth

4   encoding step identified above) is performed by the quantizer 22 shown in Figure 1.  See Lippetz

5   Decl., Ex. I at Figure 1.

6           Similarly, each independent claim of the '080 patent also requires four encoding

7   steps as shown below:

| Encoding step | Claim element |
| --- | --- |
| "converting a time domain representation of the audio signal into a frequency domain representation . . . ." | Element (a) of claim 1<br>Element (a)(1) of claim 4 |
| "calculating a masking threshold . . ." | Element (b) of claim 1<br>Element (a)(2) of claim 4 |
| "using a rate loop processor . . . to determine a set of quantization step size coefficients . . . using the masking threshold and an absolute hearing threshold" | Element (c) of claim 1<br>Element (a)(3) of claim 4 |
| "coding the set of frequency coefficients based on the set of quantization step size coefficients." | Element (d) of claim 1<br>Element (a)(4) of claim 4 |

15  Lippetz Decl., Ex. J.

16          That each of these steps is an encoding step is made clear by the claims

17  themselves and the figures and description in the '080 patent. In claim 1, all four steps are

18  explicitly claimed as "coding" steps.  Lippetz Decl., Ex. J at 24:44-58 (reciting "[a] method of

19  **coding** an audio signal . . ." followed by the four coding steps (a) - (d)). (emphasis added).

20  Figures 2 and 4 of the '080 patent show a coder in which each of the above steps is performed.

21  The converting step (the first encoding step identified above) is performed by the FFT within the

22  encoder 104.  Lippetz Decl., Ex. J at figures 2 and 4 and 5:54-59 (describing block 202 as

23  transforming the signal from the time domain to the frequency domain).  The steps of calculating

24  a masking threshold and using a rate loop processor (the second and third steps identified above)

25  are performed by the perceptual model processor 204 and quantizer and rate loop processor

26  blocks within block 206 of the encoder 104 shown in Figure 2.  *See* Lippetz Decl., Ex. J at 6:25-

27  7:46 (describing blocks 204 and 206 as performing the calculation of masking thresholds and

28  quantization).  Finally, the coding step (the fourth encoding step identified above) is performed

PLAINTIFF SANDISK'S MOTION FOR SUMMARY JUDGMENT

1  by the coding block of the encoder.  Lippetz Decl., Ex. J at Figures 2, 4 and 8 and *supra* Section

2  V(B).  Thus, these encoding steps are explicit, required steps in each of the claims.  These

3  encoding steps cannot be ignored, and both this Court in *Dolby* and the *Microsoft* court found

4  them to be necessary requirements of the claims. [9]  For these reasons, summary judgment

5  declaring that SanDisk does not infringe the '457 or '080 patents is appropriate.

6     The *Microsoft* case further, and independently, supports this conclusion.  Based

7  on it, Lucent is judicially estopped from arguing that the claims of the patents do not require the

8  recited encoding steps.  This is especially true with regard to claim 4 of the '080 patent.  "The

9  doctrine of judicial estoppel is that where a party successfully urges a particular position in a

10  legal proceeding, it is estopped from taking a contrary position in a subsequent proceeding where

11  its interests have changed."  *Data General Corp. v. Johnson*, 78 F.3d 1556, 1565 (Fed. Cir.

12  1996).  Judicial estoppel is designed to prevent the perversion of the judicial process and

13  intended to protect the courts.  *Id.*  Judicial estoppel has, for example, been applied to provide

14  preclusive effect to a prior claim construction that a patentee had previously advocated.  *Smith &*

15  *Nephew, Inc. v. Arthrex, Inc.*, Case No. CV 04-29-MO, 2007 WL 1114229 (D. Or. April 12,

16  2007).

17     In the *Microsoft* case, Lucent argued to preserve validity that there was

18  "[u]ndisputed evidence establish[ing] that claim 4 [of the '080 patent] incorporates each step of

19  claim 1," which set forth the encoding elements recited above.  Lippetz Decl., Ex. H at 21.  This

20  argument was successful before the court.  Lippetz Decl., Ex. C at 25.  As a result, Lucent is

21  estopped from taking a contrary position against SanDisk.

22

23  _____

24    [9] Lippetz Decl., Ex. A at 5 (all claims in the '457 patent are required, *inter alia*, to
"generate a tonality value") and at 10 (all claims in the '938 patent are required to "use an

25  absolute hearing threshold.").  *See also* Lippetz Decl., Ex. C at 32 n. 17 (finding "[i]n contrast,
the claims at issue related to only specific features that could be used in conjunction with MP3

26  encoding.  The '457 patent relates to the methods of audio coding using a tonality value and a
masking threshold.  The '080 patent relates to methods and apparatus for audio coding which

27  incorporates the use of an absolute hearing threshold in conjunction with a masking threshold.")

28

PLAINTIFF SANDISK'S MOTION FOR SUMMARY JUDGMENT

1    **2.      SanDisk's Players Do Not Encode**

2           In these circumstances, to establish direct infringement, either literally or under

3    the doctrine of equivalence, Lucent must be able to prove that SanDisk's audio players perform

4    the claimed encoding steps.  No such showing can be made.  SanDisk's players do not encode at

5    all, much less in accordance with the claimed patented method.  Bone Decl. at ¶¶ 3-7.  SanDisk's

6    players receive encoded audio files from a user's computer through a cable and stores them in

7    flash memory.  Users then operate the device to decode and play the music stored in memory.

8    *Id.*  The encoding process occurs entirely outside of all SanDisk players.  *Id.*  There can be no

9    finding of direct infringement, either literal or under the doctrine of equivalents.

10   **3.      SanDisk Is Licensed Under The '080 Patent**

11          There can be no showing of direct infringement of the '080 patent for the separate

12   and independent reason that, indisputably, SanDisk is licensed under that patent.  The Amended

13   Judgment in *Microsoft* established that Fraunhofer is a co-owner of the '080 patent and, as an

14   owner, Fraunhofer has the right to license rights thereunder.  Lippetz Decl., Ex. G at 3-4.

15   Thomson, acting as licensing agent for Fraunhofer, licensed the Fraunhofer MP3 patents to

16   Microsoft, which license has been held to convey the right to practice the '080 patent.  *Id.*  As

17   with Microsoft, SanDisk also has a license, through Thomson, to practice all of the Fraunhofer

18   MP3 patents.  *See supra* Section V(E).  Therefore, SanDisk's license with Thomson also conveys

19   to SanDisk the right to practice the '080 patent.  Moreover, because Lucent is not the sole owner

20   of the '080 patent, it has been judicially determined that Lucent cannot seek to enforce the patent

21   on its own.  Lippetz Decl., Ex. G at 3.  Thus, Lucent lacks standing to assert the '080 patent

22   against SanDisk.

23          For all of these reasons, SanDisk is entitled to summary judgment declaring that it

24   does not directly infringe either the '457 or '080 patent.

25   **D.      SanDisk Is Entitled To A Declaration That It Does Not Indirectly Infringe
             Either Of The Patents**

26

27          SanDisk is not liable for either contributory infringement or inducing

28   infringement.  Contributory infringement requires proof that: (1) an alleged infringer

1  manufactures a material or apparatus for use in practicing a patented process, (2) the material or

2  apparatus constitutes a material part of the invention, (3) the alleged infringer knows the material

3  or apparatus is specially made or adapted to be used to infringe the patented method, and (4) the

4  material/apparatus is not a staple or commodity suitable for substantial non-infringing use.

5  35 U.S.C. § 271(c); *C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.,* 911 F.2d 670, 673

6  (Fed. Cir. 1990).  The imposition of contributory infringement liability also requires another to

7  have infringed directly.  *Aro Mfg. Co. v. Convertible Top Replacement Co.,* 365 U.S. 336, 341–

8  42 (1961), *superseded on other grounds by Finnsugar Bioproducts, Inc. v. Raytheon Eng'rs &*

9  *Constructors, Inc.,* No. 97-C-8746, 1998 WL 703463, at *1 (E.D. Ill. Sep. 30, 1998).

10  Inducement infringement requires a showing "first that there has been direct infringement, and

11  second that the alleged infringer knowingly induced infringement and possessed specific intent

12  to encourage another's infringement."  *Minn. Min. & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294,

13  1304-5 (Fed. Cir. 2002) (citation omitted).  Where "active inducement" to directly infringe is

14  asserted based on a defendant's providing instructions to customers, the instructions must be

15  such as to give the customer (the putative direct infringer) instructions on how to perform the

16  patented method.  *See, e.g., Apple Computer Inc., v. Articulate Sys. Inc.*, 991 F. Supp. 1189, 1191

17  (N.D. Cal. 1997).

18          As respect to both types of indirect infringement, Lucent cannot make the

19  requisite showings.

20

21          **1.      SanDisk Is Not Liable For Indirect Infringement Because Lucent
                      Cannot Prove Any Direct Infringement**

22          Lucent cannot make the required showing of direct infringement that would

23  subject San Disk to liability for indirect infringement.

24          Because there is no liability for direct infringement through the use of WMP,

25  SanDisk cannot be liable for indirect infringement when its players are used with WMP.  Lucent

26  has focused its assertions against SanDisk on the use of Microsoft WMP in combination with

27  SanDisk's MP3 products.  Lippetz Decl., Ex. Q.  However, Lucent has already failed to establish

28  the requisite direct infringement in connection with Microsoft's WMP.  As determined by the

1  *Microsoft* court, Microsoft's WMP, either alone or in combination with a Cyberlink encoder,

2  does not infringe the '457 patent.  Lippetz Decl., Ex. G at 3-4.  Likewise, the *Microsoft* court has

3  established that Microsoft is licensed under the '080 patent, and therefore its use of the methods

4  taught thereunder is not an infringing use.  *Id.*  Lucent is bound by these determinations.  *See*

5  *supra* Section V(F)(1).  Further, WMP end-users are licensed to the '080 patent just like

6  Microsoft.  Section 4.1(c) of the 1997 Microsoft-Thomson Agreement provides that Microsoft

7  can grant its rights to the encoding software to third parties.  Lippetz Decl., Ex. O at 3.  Section

8  4.2 provides that the rights granted in Section 4.1 include the rights to all patents "which

9  Thomson and [Fraunhofer] have the right to license, to the extent necessary to exercise any

10 license right granted herein."  *Id.*  Thus, based on the *Microsoft* court's findings that Microsoft's

11 WMP does not infringe, SanDisk cannot be liable for infringement based on a combination of its

12 MP3 players with the non-infringing WMP.

13         Lucent has not asserted that the use of any other encoding or media software

14 constitutes infringement of either of the patents-in-suit.  To the contrary, in asserting its patents

15 against SanDisk, Lucent only identified use of Microsoft's WMP as resulting in any form of

16 infringement.  Lippetz Decl., Ex. Q.  Lucent cannot now cure this defect, and avoid summary

17 judgment, by offering speculative assertions unsupported by concrete facts.  *See Anderson*, 447

18 U.S. at 248 (noting that unsupported allegations or conjecture are insufficient to raise a genuine

19 issue of material fact).

20         **2.     SanDisk Is Not Liable For Contributorily Infringing Either Patent**

21         SanDisk also is not liable for contributory infringement because SanDisk's

22 players are staple articles of commerce with substantial non-infringing uses including, but not

23 limited to, their use with the non-infringing WMP.  In *Dynacore Holdings Corp. v. U.S. Philips*

24 *Corp.,* 363 F.3d 1263 (Fed Cir. 2004), the Federal Circuit explained the principles underlying

25 contributory infringement.  With reference to *Sony Corp. of America v. Universal City Studios,*

26 *Inc.*, 464 U.S. 417 (1984), it explained:

27         [T]he Patent Act does not suggest "that one patentee may object to
         the sale of a product that might be used in connection with other
28         patents. Moreover, the Act expressly provides that the sale of a

1

> 'staple article or commodity of commerce suitable for substantial noninfringing use' is not contributory infringement."

2

> Of more direct relevance to Dynacore, however, was the Supreme Court's explanation that the statutory theories of indirect patent infringement, as developed through case law, "deny the patentee any right to control the distribution of unpatented articles unless they are unsuited for any commercial noninfringing use," because the "sale of an article which though adapted to an infringing use is also adapted to other and lawful uses, is not enough to make the seller a[n indirect] infringer. Such a rule would block the wheels of commerce."

3

4

5

6

7

> *Id.* at 1275 (internal citations omitted).

8

> Further:

9

10

> The *Sony* standard for vicarious infringement liability, which the Supreme Court imported into copyright law from the narrow patent law reference to "a staple article or commodity of commerce suitable for substantial noninfringing use," 35 U.S.C. § 271(c) (emphasis added), remains a valid articulation of patent law even beyond staple articles and commodities: The mere sale of a product capable of substantial noninfringing uses does not constitute indirect infringement of a patent. *See, e.g.*, *Jansen*, 342 F.3d at 1332; *Anton/Bauer*, 329 F.3d at 1349.

11

12

13

14    *Id.* at 1275.

15    A non-staple article is "one which was designed to carry out the patented process

16    and has little or no utility outside of that process." *Polysius Corp. v. Fuller Co.*, 709 F. Supp.

17    560, 576 (E.D. Pa. 1989), *aff'd*, 889 F.2d 1100 (Fed. Cir. 1989). To make this determination, a

18    court must look at the entire device and not just the part capable of practicing the claims of the

19    patent at issue. *Hodosh v. Block Drug Co.*, 833 F.2d 1575, 1578 (Fed. Cir. 1987); *see also TV*

20    *Interactive Data Corp. v. Microsoft Corp.*, Case No. C 02-02385 JSW, 2005 WL 1910929, at *4

21    (N.D. Cal. Aug. 10, 2005) (granting Microsoft's motion for partial summary judgment with

22    respect to contributory infringement because its product has "numerous substantial features that

23    are unrelated to [the patented feature], each with its own utility"); *Universal Elecs., Inc. v. Zenith*

24    *Elecs. Corp.*, 846 F. Supp. 641, 652 (N.D. Ill. 1994) (finding Universal remote control

25    transmitter to be a staple article of commerce suitable for substantial non-infringing use because

26    it could operate many electronic devices not manufactured by Zenith). Thus, a product does not

27    contributorily infringe if either: 1) it was not specially adapted to infringe the patented method,

28    or 2) it has substantial non-infringing uses.

1   SanDisk's players do not contributorily infringe because they are not specially

2   adapted to infringe.  SanDisk players store, decode and play music defined by standard formats,

3   MP3, WMA and secure WMA, that do not require use of either patent.  In this regard, the

4   *Microsoft* court has already found that the patents-in-suit cover encoding techniques, but are not

5   necessary for the MP3 standard, holding "[i]mportantly, neither the '457 patent nor the '080

6   patent covers MP3 capability per se.  Rather, each patent relates to a particular *feature* of MP3

7   capability."  Lippetz Decl., Ex. C.  (original emphasis preserved).  The Court went on to explain

8   in footnote 17:

9       Lucent's own witness Dr. Jayant, testified that MP3 technology
        originated from many sources and is composed of many features,

10      including the bit stream syntax (how the bit stream is interpreted and
        meaningfully decoded to play back the audio signal), features of the
        decoder and some features of the encoder. (Trial Tr. vol. II, 121:11-

11      23, 123:2-22, Jan. 30, 2007.) In contrast, the claims at issue related to
        only particular features that could be used in conjunction with MP3

12      encoders. The '457 patent relates to the methods of audio coding
        using a tonality value and a masking threshold. The '080 patent

13      relates to methods and apparatus for audio coding which incorporates
        the use of an absolute hearing threshold in conjunction with a

14      masking threshold.

15  *Id.*  Thus, the Microsoft court's decision establishes that the particular coding techniques claimed

16  in the '457 and '080 patents, while compatible with the MP3 standard if implemented, are

17  nonetheless not required by the standard.  Microsoft's product, when encoding into WMA and

18  secure WMA formats, was not found to infringe, which also establishes that the patents are not

19  necessary to these formats.  Thus, because SanDisk players decode audio files in three standard

20  formats -- MP3, WMA and secure WMA -- none of which requires the '457 or '080 patents or

21  their specific encoding requirements, SanDisk's player are staple articles of commerce that are

22  not specially made or adapted to be used to infringe the patented method.  *C.R. Bard*, 911 F.2d

23  at 673.

24  SanDisk's players also have substantial non-infringing uses.  The court in the

25  Microsoft case held that the '457 patent does not cover any encoding done by WMP into the

26  MP3, WMA or secure WMA format.  The court also held that the '080 patent does not cover any

27  encoding done by WMP into the WMA or secure WMA formats.  Finally, the court found that

28  the use of WMP to encode into MP3 format did not infringe the '080 patent because of the

22

PLAINTIFF SANDISK'S MOTION FOR SUMMARY JUDGMENT

1   Fraunhofer license. Thus, when a user plays music on a SanDisk player that has been encoded

2   into WMA (the default setting of WMP) or secure WMA format, there is no infringement.

3   Similarly, when a user utilizes WMP to encode in MP3 format, there is no infringement. Thus,

4   even if Lucent could prove that the combination of a SanDisk player with some MP3 encoding

5   software infringed, there are numerous non-infringing uses that insulate SanDisk from liability

6   for contributory infringement.

7

8            **3.     The Amended Judgment Makes Clear That Lucent Will Be Unable To Prove The Requisite Intent For Inducing Infringement.**

9         To establish liability for inducing infringement requires a showing that the

10  accused infringer had knowledge of the patent and an intent to cause infringement, not merely

11  the intent to cause activity constituting infringement. *DSU Med. Corp. v. JMS Co., Ltd.*, 471

12  F.3d 1293, 1305 (Fed. Cir. 2006). In addition, the patent owner has the burden of showing that

13  the alleged infringer's actions induced infringing acts and that he knew or should have known his

14  actions would induce actual infringements. *Id.* Thus, it must be proven that the alleged infringer

15  knew of the patent, and that they "actively and knowingly aid[ed] and abett[ed] another's direct

16  infringement." *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988). The

17  "mere knowledge of possible infringement by others does not amount to inducement; specific

18  intent and action to induce infringement must be proven." *Warner-Lambert Co. v. Apotex Corp.*,

19  316 F.3d 1348, 1364 (Fed. Cir. 2003).

20         Here, the *Microsoft* Amended Judgment makes clear that, at best, Lucent will be

21  able to prove that SanDisk directed its customers to use a non-infringing software product.

22  SanDisk's product documentation and website encourage customers to use WMP, and other

23  software products, to manage their music. Bone Decl. at ¶¶ 12-13. SanDisk also provides

24  assistance to customers as to how to encode music, but does so without specifying which format

25  to use. *Id.* To the extent SanDisk is suggesting the use of WMP, however, SanDisk is not liable

26  because, at most, it is "inducing" its customers to use a product that has been determined not to

27  infringe. Lucent has not alleged, and there has been no judicial or other determination, that any

28  other encoding software infringes the patents-in-suit. Therefore, to the extent SanDisk is

1  suggesting the use of encoding software besides WMP, it will be impossible for Lucent to

2  demonstrate both that:  1) such other software infringes, 2) SanDisk knew that such other

3  software infringed, and 3) SanDisk intended for its customers to infringe.

4  **VII.    CONCLUSION**

5          For the reasons stated above, SanDisk respectfully requests that this Court grant

6  summary judgment in favor of SanDisk for non-infringement of the '457 and '080 patents, and

7  for a declaration that SanDisk is licensed to practice the '080 patent.

8
   DATED:  October  26, 2007
9

10                                         Bingham McCutchen LLP

11

12

13                                         By:_____/s/ Gregory L. Lippetz_____
                                                       Gregory L. Lippetz
14                                             Attorneys for Plaintiff/Counterdefendant
                                                   SANDISK CORPORATION

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF SANDISK'S MOTION FOR SUMMARY JUDGMENT