# EXHIBIT D

1

2                   **UNITED STATES DISTRICT COURT**

3                   **SOUTHERN DISTRICT OF CALIFORNIA**

4

5   LUCENT TECHNOLOGIES INC.,

6           Plaintiff and Counterclaim-defendant,

7   v.

8   GATEWAY, INC. and GATEWAY
    COUNTRY STORES LLC, GATEWAY
    COMPANIES, INC., GATEWAY

9   MANUFACTURING LLC and
    COWABUNGA ENTERPRISES, INC.,

10                                              **Civil No:** 02CV2060-B(CAB)
            Defendants and Counter-claimants,    consolidated with
11                                              **Civil No:** 03CV0699-B (CAB) and
    and                                         **Civil No:** 03CV1108-B (CAB)

12
    MICROSOFT CORPORATION,
13                                              **ORDER ON MOTIONS FOR SUMMARY**
            Intervenor and Counter-claimant,    **JUDGMENT IN GROUP 2**
14

15  _____

    MICROSOFT CORPORATION,
16
            Plaintiff and Counterclaim-defendant,
17
    v.
18
    LUCENT TECHNOLOGIES INC.,
19
            Defendant and Counter-claimant
20

21  _____

    LUCENT TECHNOLOGIES INC.,
22
            Plaintiff,
23
    v.
24
    DELL, INC.,
25
            Defendant.
26

27  _____

28

I.      **INTRODUCTION**

      On November 16, 2006, and November 21, 2006, Lucent and Microsoft, respectively, filed motions for summary adjudication on the Group 2 audio coding patents, U.S. Patent Nos. 5,341,457 ("the '457 patent") and RE 39,080 ("the '080 patent"). The parties then filed oppositions and replies thereto and a hearing was held on January 4, 2007. Having considered the parties motions and evidence in support thereof, the Court now rules as explained herein.

II.     **BACKGROUND**

      Lucent filed for patent infringement against Dell and Gateway in 2002. The case was originally filed in the Eastern District of Virginia and then transferred to the Southern District of California. Microsoft filed a declaratory judgment against Lucent in 2003. The cases were eventually consolidated. The instant Group 2 audio coding patents are at issue only between Lucent and Microsoft; they have not been asserted against Dell or Gateway. Microsoft's Windows Media Players WMP10 and WMP11 and the software contained therein for encoding into MP3 format are alleged to infringe one or both of the patents.

     A.    **The '457 Patent**

      The application for the '457 patent was filed on December 30, 1988 by inventors James Johnston and Joseph Hall. The '457 patent describes a method of processing audio signals to compress them into smaller file sizes. The method eliminates signals that are not heard by the human ear so that those portions are not encoded and file space is saved. This process takes audio signals that have been transformed into the frequency spectrum and assesses which frequency coefficients will be masked by others and thus not heard by the human ear; this sets a "masking threshold." The signals above the threshold are quantized and encoded. A feature of the method claimed in the '457 patent is the use of a "tonality value" to produce a more accurate masking threshold. A tonality value assesses whether the sound is more tone-like or noise-like and then sets the masking threshold accordingly.

## B.   The '080 Patent

The '080 patent is a reissue patent.  The original patent on which it was based is U.S. patent No. 5,627,938 ("the '938 patent") which was applied for on September 22, 1994, issued on May 2, 1997, and assigned to Lucent.  On its face, the '938 patent claims to be a continuation of application serial no. 844,811 filed on March 2, 1992.  The '938 patent is directed to methods of encoding audio information in the smallest file size with the highest sound quality.  To accomplish this goal, the method uses two thresholds, a masking threshold which measures whether introduced noise (from the encoding) is audible and an absolute hearing threshold which measures the quietest sounds that can be heard by a human.

On August 13, 2002, Lucent applied for a reissue of the '938 patent.  The reissue, the '080 patent, was granted on April 25, 2006.  The claims of the reissue are almost identical to those of the '938 patent; the only change is the deletion of dependent claim 2 in the reissue.  Otherwise, the claim language remains essentially the same.  The change appears in Lucent's claim of priority date in the '080 patent, which now reads:

> This is a reissue application of U.S. Pat. No. 5,627,938 filed Sep. 22, 1994 as application Ser. No. 08/310,898 which is a continuation of application Ser. No. 07/844,811, filed on Mar. 2, 1992, now abandoned, which is a continuation-in-part of application Ser. No. 07/844,967 filed Feb. 28, 1992, now abandoned, which is a continuation of Ser. No. 07/292,598 filed Dec. 30, 1988 now abandoned.

Hence, if given effect, the '080 patent now claims priority back to December 30, 1988.  The application to which it claims priority, serial no. 07/292,598 issued as U.S. Patent No. 5,341,457 ("the '457 patent"), the other patent at issue in the instant Group 2 audio coding litigation.

## III.   ANALYSIS

### A.   STANDARD OF LAW

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on

1  file, together with the affidavits, if any, show that there is no genuine issue as to any

2  material fact and that the moving party is entitled to judgment as a matter of law." In

3  considering the motion, the court must examine all the evidence in the light most favorable

4  to the non-moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 257 (1986). If

5  the Court is unable to render summary judgment upon an entire case and finds that a trial is

6  necessary, it shall if practicable grant summary adjudication for any issues as to which,

7  standing alone, summary judgment would be appropriate. Fed. R. Civ. P. 56(d).

8          When the moving party does not bear the burden of proof, summary judgment is

9  warranted where the moving part demonstrates an absence of facts to support the non-

10  moving party's case and where the non-moving party responding to the motion fails "to

11  make a sufficient showing on an essential element of her case with respect to which she has

12  the burden of proof." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 325 (1986).

13          **B.      Lucent's motion for summary adjudication on the '457 patent**

14                  **1.      No Invalidity for indefiniteness**

15          Lucent moves for summary adjudication that the claims of the '457 patent are not

16  invalid under §112 ¶2 for indefiniteness. Section 112 paragraph 2 requires the claims of a

17  patent to point out and distinctly claim "the subject matter which the applicant regards as

18  his invention." 35 U.S.C. §112. Lucent contends that Microsoft's only evidence on which

19  it rests its allegations is the testimony of inventor James Johnston offering a purported

20  understanding of the invention that differs from the claims. In response, Microsoft argues

21  that it has offered not only the inventor's testimony but also expert opinion that the '457

22  specification does not teach the association of a tonality value with each frequency group,

23  as set forth in the claims.

24          Having considered these contentions and the evidence in support thereof, the Court

25  finds there is no genuine issue of material fact regarding invalidity. In <u>Solomon v.</u>

26  <u>Kimberly-Clark Corp.</u>, the Federal Circuit concluded that "that inventor testimony,

27  obtained in the context of litigation, should not be used to invalidate issued claims under

28                                              4

1    section 112, paragraph 2." 216 F.3d 1372 (Fed. Cir. 2000). Thus, James Johnston's

2    testimony is insufficient to support a claim for invalidity. Additionally, Microsoft's expert

3    opinion goes towards lack of written disclosure under §112 ¶ 1, rather than indefiniteness

4    under §112 ¶ 2. Therefore, Lucent's motion for summary adjudication on this ground is

5    **GRANTED**.

6              **2.       No Patent Exhaustion**

7          Under the doctrine of patent exhaustion, often referred to as the "first sale"

8    doctrine," once a patentee has sold a patented product without any further restrictions, the

9    patentee has parted with his exclusive rights. <u>Mallinckrodt, Inc. v. Medipart, Inc.</u>, 976 F.2d

10   700, 707 (Fed. Cir. 1992). In its fifteenth affirmative defense, Microsoft alleges that it

11   bought the accused software from German corporation Fraunhofer Gesselschaft

12   ("Fraunhofer") which allegedly had rights from AT&T (Lucent's predecessor), thus giving

13   rise to patent exhaustion..

14          This is not the first time this issue has been raised before the Court: In July 2005,

15   the Court heard and denied Microsoft's motion for partial summary judgment that the

16   Fraunhofer MP3 codecs used by Microsoft cannot infringe due to patent exhaustion.[1] At the

17   time the Court ruled, there remained an outstanding issue as to whether an additional

18   written agreement existed other than the 1989 Joint Development Agreement ("JDA")

19   between Fraunhofer and AT&T that would permit Fraunhofer the right to produce and sell

20   the software performing the method of the '457 patent. In the instant motion, Lucent

21   argues since the Court has rejected this defense, Microsoft should be precluded from

22   asserting it any further. In opposition, Microsoft contends that although there is no other

23   agreement, parole evidence raises an issue of material fact as to the intent of the JDA.

24          Having considered these arguments, the Court finds that the JDA on its face is not

25   ambiguous. It sets forth no right for Fraunhofer to sell the technology of the '457 patent.

26

27          [1] Order July 27, 2005 [docket no. 322].

28                                        5

1   Moreover, even if this Court were to take into consideration the parole evidence offered, it

2   would not raise a genuine issue of material fact: the majority of the evidence is testimony

3   taken many years after the JDA was formed and after other interests have intervened.

4   Additionally, some of the proffered evidence does not even speak to the technology of the

5   '457 patent but only to the parties' intent concerning technology of U.S. Patent No.

6   5,627,938, (the predecessor to the '080 patent). Therefore, Lucent's motion for summary

7   adjudication to preclude Microsoft from going forward on the defense of patent exhaustion

8   is **GRANTED**.[2]

9               **3.      No Implied License**

10      To prevail on an implied license theory, Microsoft must prove that "the

11  circumstances of the sale . . . plainly indicate that the grant of a license should be inferred."

12  LG Electronics, Inc. v. Bizcom Electronics, Inc., 453 F.3d 1364, 1369 (Fed Cir. 2006).

13      Lucent contends, similar to its argument regarding patent exhaustion, that the Court

14  has already addressed this issue and concluded that there was no implied license.

15  Microsoft responds that its new evidence pertaining to patent exhaustion also raises issues

16  of material fact with respect to implied license.  Having considered the agreements and

17  supporting evidence, for similar reasons to those discussed above, Lucent's motion to

18  preclude Microsoft from going forward on the defense of implied license is **GRANTED**.

19              **4.      No Equitable estoppel/implied license/waiver**

20      To prevail on a defense of equitable estoppel, the defendant must demonstrate: "1)

21  the patentee, through misleading conduct, leads the alleged infringer to reasonably infer

22  that the patentee does not intend to enforce its patent against the alleged infringer, 2) the

23  alleged infringer relies on that conduct, and 3) due to its reliance, the alleged infringer will

24

25      [2] Additionally, patent exhaustion would not apply to many of the claims at issue because they
        are method claims.  The first sale doctrine is inapplicable where an accused device infringes methods
26      claims. LG Electronics, Inc. V. Bizcom Electronics, 453 F.3d 1364, (Fed. Cir. 2006) (stating that "the
        sale of a device does not exhaust a patentee's rights in its method claims" and citing to Glass
27      Equipment Dev. v. Besten, Inc., 174 F.3d 1337, 1342 n.1 (Fed. Cir. 1999) and Bandag, Inc. v. Al
        Bolser's Tire Stores, Inc., 750 F.2d 903, 924 (Fed. Cir. 1984)).

28                                              6

1   be materially prejudiced if the patentee is allowed to proceed with its claim." Ecolab, Inc.

2   v. Envirochem, Inc., 264 F.3d 1358, 1371 (Fed. Cir. 2001). Waiver/implied license arises

3   where language or conduct by the patentee leads another to "properly infer that the owner

4   consents to his use of the patent in making or using it, or selling it." Winbond Electronics

5   Corp. v. International Trade Com'n, 262 F.3d 1363, 1374 (Fed. Cir. 2001). Both of the

6   defenses share the element of reliance.

7          Here, Lucent contends that Microsoft has failed to provide evidence of any conduct

8   or any reliance that would constitute equitable estoppel or waiver. In response, Microsoft

9   offers evidence of Lucent's long silence on Microsoft's products and a double-hearsay

10  statement allegedly made by someone at Lucent to someone at Microsoft that Microsoft

11  was not on Lucent's radar screen with regard to its patent portfolio.[3] This evidence does

12  not satisfy the burden of presenting some evidence of a basis for equitable estoppel. See

13  A.C. Aukerman Co. v. R.L. Chaides Const. Co., 960 F.2d 1020, 1043 (Fed. Cir. 1992)

14  ("silence alone will not create an estoppel unless there was a clear duty to speak.");

15  Winbond Electronics Corp. v. International Trade Com'n, 262 F.3d 1363, 1374 (Fed. Cir.

16  2001) (alleged infringer must know about the patent and reasonably infer acquiesce to the

17  infringement from the patentee's acts or statements to demonstrate waiver/implied license);

18  but see Hynix Semiconductor Inc. v. Rambus Inc., 2006 WL 1867724 (N.D.Cal. 2006) (a

19  party's affirmative representation that it has no patents covering the alleged infringer's

20  activities may be sufficient to apply equitable estoppel where alleged infringer had no

21  knowledge of patentee's patent).

22         But, even if the above evidence were enough to require further analysis, Microsoft

23

24         [3] The alleged statement (that Microsoft was not on Lucent's radar screen with respect to
25  Lucent's patent portfolio) was apparently made by an unidentified person at Lucent to Mr. Eppenauer,
    a Microsoft employee, who then relayed the statement to Mr. Weresh, Microsoft's 30(b)(6) witness.
26  To further complicate the situation, the parties agreed not to depose Mr. Eppenhauer and not to
    designate him as a witness for trial. Hence, the statement, although purportedly a party admission by
27  Lucent, will not be admissible at trial because the witness who heard the alleged statement will not
    testify.

28                                              7

1  fails to make a sufficient showing of reliance to raise a genuine issue of material fact; it

2  offers nothing more than conclusory statements of what it *might* have done but no evidence

3  that it actually did rely on Lucent's conduct or statement. In fact, it is not disputed that the

4  only sworn testimony on the subject of reliance came from two tendered Microsoft

5  witnesses who both testified that they did not rely on any assurances from Lucent.

6  Therefore, there is no material issue of fact on reliance and Lucent's motion on Microsoft's

7  defenses of equitable estoppel/waiver/implied license is **GRANTED**.

8              **5.    No Laches**

9      For the defense of laches, "a defendant has the burden to prove two factors: 1. the

10  plaintiff delayed filing suit for an unreasonable and inexcusable length of time from the

11  time the plaintiff knew or reasonably should have known of its claim against the defendant,

12  and 2. the delay operated to the prejudice or injury of the defendant." Aukerman, 960 F.2d

13  at 1032. Laches, however, will not bar post-filing damages or injunctive relief. Id. at 1040.

14  "Laches bars relief on a patentee's claim *only* with respect to damages accrued prior to

15  suit." Id. at 1041. In the instant case Lucent does not seek any pre-filing damages, and

16  therefore laches is inapplicable; on this ground, Lucent's motion is **GRANTED**

17              **6.    No Patent misuse**

18      Patent misuse addresses whether "the patentee has impermissibly broadened the

19  'physical or temporal scope' of the patent grant with anticompetitive effect." B. Braun

20  Medical, Inc. v. Abbott Laboratories, 124 F.3d 1419, 1426 (Fed. Cir. 1997). Lucent asserts

21  that Microsoft has failed to provide sufficient evidence to support this defense. Although

22  Microsoft argues in response that Lucent has attempted to license the '457 patent packaged

23  with patents it knew to be invalid and/or co-owned, Microsoft does not further elaborate on

24  any evidence that supports this contention, but only offers conclusory statements.

25  Therefore, Microsoft has failed to raise a genuine issue of fact sufficient to preclude

26  summary judgment; Lucent's motion is **GRANTED**.

27

28                              8

1

### 7.    Availability of post-1987 §102(a),(e) art

2      This issue was briefed in conjunction with Lucent's motion on the '080 patent and is

3  therefore addressed in the relevant section below; for similar reasons as explained therein,

4  the motion as it pertains to the '457 patent is **DENIED**.

5

### 8.    Date of actual notice as Apr. 8, 2003

6      Microsoft filed for declaratory judgment on April 8, 2003.  One month later, on May

7  9, 2003, Lucent answered Microsoft's complaint and cross-complained for patent

8  infringement.  Lucent asserts that April 8 is the date of actual notice of infringement and

9  thus the date to trigger damages.  Microsoft responds that the notice must come directly

10  from the patentee and hence, May 9 is the triggering date.

11      The Federal Circuit has held generally, that "notice must be an affirmative act on the

12  part of the patentee which informs the defendant of infringement . . . [and it] must focus on

13  the action of the patentee, not the knowledge of the infringer." Lans v. Digital Equipment

14  Corp., 252 F.3d 1320, 1327 (Fed. Cir. 2001).  Furthermore, "the actual notice requirement

15  of § 287(a) is satisfied when the recipient is informed of the identity of the patent and the

16  activity that is believed to be an infringement, accompanied by a proposal to abate the

17  infringement" SRI Intern., Inc. v. Advanced Technology Laboratories, Inc., 127 F.3d

18  1462, 1470 (Fed. Cir. 1997).[4]

19      A declaratory judgment does not meet these standards.  Its purpose is a declaration

20  of no infringement; the party bringing the action for declaratory relief believes that the

21  activity in question is *not* an infringement.  It is not an action taken by the patentee.  A

22  declaratory judgment also is not proposal to abate the infringement, but rather a statement

23  of intent by the party filing the action to continue the activity in question.  Therefore,

24

---

25      [4] 35 U.S.C § 287(a) refers to the recovery of damages by a patentee that has failed to mark and
26  where the patentee must then give actual notice of the alleged infringement.  While marking is not at
   issue here, neither party is contending that damages should begin before Microsoft received actual
27  notice, and thus it is only the definition of "actual notice" that remains at issue.

28

1  Lucent's first affirmative action as patentee, notifying Microsoft that its activity is believed

2  to be an infringement triggers actual notice.  This date is May 9, 2003, the date of Lucent's

3  answer and cross-complaint for infringement to Microsoft's declaratory complaint.

4  Therefore, Lucent's motion to set the date of notice at April 8, 2003, is **DENIED**.

5          **C.**     **Microsoft's motion for summary adjudication on the '457 patent**

6                  **1.**     **No infringement by the HQ or Cyberlink encoder**

7          Microsoft contends that the HQ encoder, the accused infringing software used in

8  WMP10, does not infringe the '457 patent for two reasons: (1) the HQ encoder is never

9  used and therefore cannot infringe; and (2) the software used in the HQ encoder does not

10  meet the limitations of the claimed method of the '457 patent.

11          With respect to the first point, Microsoft argues that Lucent's expert Dr. Polish, has

12  only speculated as to circumstances in which the HQ encoder might function but has not

13  demonstrated nor witnessed any such function and has admitted so in his testimony.

14  Therefore, Microsoft concludes that since the WMP10 software exclusively employs other

15  modes of encoding, the software cannot infringe the methods of the '457 patent.  See

16  Dynacore Holdings Corp. v. U.S. Philips Corp., 363 F.3d 1263, 1276 (Fed. Cir. 2004)

17  ("mere sale of a product capable of substantial non-infringing uses does not constitute

18  indirect infringement").[5]  However, Lucent contends that there is undisputed evidence that

19  the code running the HQ encoder as a backup is present in all copies of the WMP10

20  software, that Microsoft intentionally placed the code into the software and that Dr. Polish

21  has identified at least four conditions based on the software code that will trigger that HQ

22  encoder.  Thus, according to Lucent, this circumstantial evidence is a sufficient to raise a

23  genuine issue of material fact to preclude summary judgment.  See Moleculon Research

24  Corp. v. CBS, Inc., 793 F.2d 1261, 1272 (Fed. Cir. 1986) (circumstantial evidence may

25  support a claim of infringement without direct evidence).

26

27          [5] Lucent has only accused Microsoft of indirect infringement.

28                                                   10

With respect to Microsoft's second ground, Microsoft, based primarily on the report of its expert Dr. Jayant, argues that the HQ encoder and cyberlink encoder use two separate sets of coefficients to transform audio signals into the frequency domain where the claimed method uses one and that in the accused software, these two sets are mixed and matched in a way that is not permitted by the claims or by the '457 specification. Lucent responds with a number of reasons why the claim language of the '457 patent encompasses the accused devices: the open language of the claims, the use of the term "associated," and the availability of infringement under the doctrine of equivalents.

Having considered each of these arguments and the evidence in support thereof, the Court finds that sufficient issues of triable fact remain to preclude summary judgment. Thus, on both grounds, Microsoft's motion is **DENIED**.

### 2.   Invalidity - anticipation

Microsoft moves for summary adjudication that the '457 patent is invalid as anticipated under 35 U.S.C. §102(b) by a Danish patent application nicknamed "Krahe II," alleged to be publically available in the Danish patent office as of December 28, 1987. This date is more than one year before the filing of the '457 patent on December 30, 1988, and thus qualifies as prior art under §102(b). According to Microsoft, Krahe II generates tonality and masking thresholds and uses them in the same way as taught by the '457 patent.

Lucent opposes the motion on many grounds: (1) Microsoft has not shown that Krahe II is a printed publication for purposes of §102(b); (2) there is no proof that the German language Krahe II reference was part of the Danish file history; (3) Microsoft has not performed an element by element analysis to show that Krahe II discloses each and every element of the '457 claims; and (4) there is a dispute between the parties' experts as to what Krahe II discloses relative to elements (b) and (c) of claim 1. Having considered each of these reasons and Microsoft's reply thereto, the Court finds there are genuine issues of material fact, with respect to all of the issues raised, especially in regards to the dispute

11

between the experts as to what Krahe II discloses, which preclude summary adjudiciation on this issue. Therefore, Microsoft's motion is **DENIED**.

### D.    Cross-motions for summary adjudication on the '080 patent

Lucent and Microsoft filed motions for summary adjudication on the '080 patent. On several issues, cross-motions were filed on identical issues. These are addressed first below; the issues unique to each motion then follow.

### 1.    No broadening reissue/ No invalidity for lack of an error warranting reissue

In contention between the parties is whether the '080 is a broadening reissue. The claims of the '080 reissue and the original '938 patent are identical; only the claim of priority differs between the two.

Simply a change in a claim of priority will not establish a broadening reissue: "[A] reissue application filed for the sole purpose of perfecting a claim to priority does not broaden the scope of the claims of the original patent and is not in contravention of the requirements of section 251 even though filed more than two years after the patent grant." Fontijn v. Okamoto, 518 F.2d 610, 621 (Cust. & Pat. App. 1975) (holding acknowledged in Medrad, Inc. v. Tyco Healthcare Group LP, 466 F.3d 1047, 1051 (Fed. Cir. 2006)). However, a reissue may not be proper where it is obtained through deceptive intent. See 35 U.S.C. § 251.

Here, although Microsoft has made allegations of ulterior motives as to why Lucent may have filed for the '080 reissue, as Lucent points out, Microsoft has failed to provide any evidence to raise any genuine issue of fact as to this defense. Moreover, as a matter of law, the change in priority date alone is an insufficient basis. Therefore, the Court **GRANTS** Lucent's motion on no broadening reissue and **DENIES** Microsoft's cross-motion. For similar reasons, the Court **GRANTS** Lucent's related motion for no invalidity for lack of an error warranting reissue.

12

1

## 2.    Recapture

2      Microsoft alleges that Lucent has attempted to recapture subject matter in the '080

3  reissue that it surrendered in the prosecution of the '938 patent.

4      A patentee may not use a reissue application to recapture "subject matter that was

5  surrendered during the prosecution of the original patent in an effort to obtain allowance of

6  the original claims." Medtronic, Inc. v. Guidant Corp., 465 F.3d 1360, 1372 (Fed. Cir.

7  2006). Arguments, even without accompanying claim amendments, may be sufficient to

8  evidence surrender of subject matter. Hester Industries, Inc. v. Stein, Inc., 142 F.3d 1472,

9  1481 (Fed. Cir.1998). Explicit statements made in the public record, i.e., in the patent itself

10  or its prosecution history, may be binding on the patentee. See Tyler Refrigeration v.

11  Kysor Indus. Corp., 777 F.2d 687, 690 (Fed. Cir. 1985) (statement to the USPTO that a

12  particular patent was "the most pertinent prior art" was binding on the patentee in

13  subsequent litigation); Constant v. Advanced Micro-Devices, Inc., 848 F.2d 1560, 1570

14  (Fed. Cir. 1988) ("A statement in a patent that something is in the prior art is binding on the

15  applicant and patentee for determinations of anticipation and obviousness.").

16      The evidence demonstrates that Lucent made admissions within the '938 patent

17  specification and its file history that now may not be retracted in the '080 reissue.

18  Specifically, the specification of the '938 patent and the '080 reissue state:

19          As in the case of the system illustrated in FIG. 1, **the system of FIG. 2, without
           more, may equally describe certain prior art systems, e.g., the system disclosed**
20          **in the Brandenburg, et al U.S. Pat. No. 5,040,217**. However, with the extensions
           and modifications described herein, important new results are obtained.
21

22  (emphasis added). Additionally, in the prosecution of the '938 patent, in response to a

23  rejection over the admitted FIG.2 as prior art, the patentee did not dispute that FIG.2 was

24  prior art but instead asserted that the claim had additional elements not disclosed in the

25  prior art.  These statements are binding on Lucent and to the extent that Microsoft's motion

26  seeks to prevent Lucent from withdrawing these admissions, Microsoft's motion is

27  **GRANTED.**

28                                          13

1    However, in regards to the affirmative defense of recapture, Microsoft's contentions

2    do not fit neatly within this defense.  To determine whether recapture applies and the

3    reissue patent is therefore invalid, the Court applies a three-step analysis: (1) whether and

4    in what respect the claims of the reissue are broader than the original patent; (2) whether

5    the broader aspects were surrendered in the earlier prosecution; and (3) whether the reissue

6    claims are narrower in other respects and thus avoid the recapture rule.  North American

7    Container, Inc. v. Plastipak Packaging, Inc., 415 F.3d 1335, 1349 (Fed. Cir. 2005).  Here,

8    because the claims remained unchanged between the original patent and the reissue, this

9    three step analysis is difficult to apply.  Microsoft argues that Lucent is allegedly

10   attempting to broaden the scope of the '080 reissue by disclaiming its prior statements.

11   While these statements are binding on Lucent, this allegation, without more, is not

12   sufficient for a defense of recapture.  Furthermore, although Microsoft argues that the

13   accused devices do not infringe the '080 claims but practice only the disclaimed prior art,

14   this argument goes more towards non-infringement than the defense of recapture.[6]  Thus,

15   with respect to recapture as an affirmative defense which would render the '080 reissue

16   invalid, issues of genuine material fact remain; therefore,  Microsoft's and Lucent's

17   motions are both **DENIED**.

18                    **3.    Intervening Rights**

19   35 U.S.C. § 252 grants a party claiming intervening rights to make, use and sell a

20   product where the grant of a reissue patent would abridge or affect the right of the party

21   already in existence.  Intervening rights are generally not granted where the product

22   infringes a valid claim of the reissued patent which also was in the original patent.  See 35

23   U.S.C. § 252.  However, intervening rights is an equitable issue and the Federal Circuit's

24   predecessor, the Court of Customs and Patent Appeals, addressed the applicability of

25

26        [6] While the prior statements made in the specification and prosecution of the '938 patent may
     have had a narrowing effect on the claims, Microsoft has not provided sufficient evidence that Lucent
27   is now disclaiming these statements in the '080 and how such a disclaimer broadens the claims of the
     '080 patent relative to the claims of the original '938 patent.

28                              14

intervening rights to a situation in which a reissue perfected a priority claim:

> We think that it is altogether possible that Section 252 can be read broadly enough to protect a deserving third party in this kind of situation. In any event a court sitting in equity, in a dispute between a patentee who had received a reissue patent with the priority right included and an infringer who had, with no warning of any kind, honestly relied on the original patent without the priority right, could justly accommodate these conflicting claims in the light of the particular circumstances.

Fontijn v. Okamoto, 518 F.2d 610, 623 -624 (Cust. & Pat. App. 1975) (quoting Comr. Pats. v. State of Israel, 400 F.2d 789, 791(D.C. Cir. 1968).

Given the similar situation here, intervening rights may be applicable. At this juncture however, Microsoft has not made a sufficient showing as to an abridgement of rights and its reliance to merit a grant of summary adjudication. Therefore, Microsoft's motion is **DENIED**. Additionally, since questions of fact remain with respect to these issues, Lucent's motion also is **DENIED**.

### D. Lucent's motion for summary adjudication on the '080 patent

#### 1. Date of priority

Lucent moves the Court for summary adjudiciation that the claims of the '080 patent are entitled to a priority date of December 30, 1988. The '080 reissue patent is a continuation-in-part (CIP) of the '457 patent, filed on December 30, 1988.

Claims in a CIP do not automatically receive the priority date as claimed for the application. "The test for sufficiency of support in a parent application is whether the disclosure of the application relied upon reasonably conveys to the artisan that the inventor had possession at that time of the later claimed subject matter." Wang Laboratories, Inc. v. Toshiba Corp., 993 F.2d 858, 865 (Fed. Cir. 1993). Hence, different claims within a CIP may lay claim to different priority dates, depending on which application of the priority chain provides sufficient support for each claim. Augustine Medical, Inc. v. Gaymar Industries, Inc., 181 F.3d 1291, 1302-03 (Fed. Cir. 1999).

For the claims of the '080 patent to claim priority to the 1988 date, Lucent must demonstrate that the '457 disclosure fully supports each of the '080 claims. Although

15

1  Lucent identifies various places in the '457 patent specification that apparently lend support

2  for each of the limitations of independent claim 1, Microsoft offers expert testimony

3  disputing this contention. Given the debate between the experts as to what is disclosed in

4  the '457 patent and what one of skill in the art would recognize as disclosed therein,

5  genuine issues of material fact remain.  Therefore, Lucent's motion is **DENIED**.

6  ## 2.  Availability of prior art

7  Lucent moves the Court for summary adjudication that no references after December

8  30, 1988, are prior art to the '080 patent.  Because this issue is intimately tied to the above

9  motion pertaining to the priority date of the claims of the '080 patent and since the material

10  issues of fact preclude summary adjudication on the priority date, the motion as it pertains

11  to availability prior art also is **DENIED**.

12  ## 3.  Failure to name a correct inventor/necessary party

13  Lucent moves the Court for summary adjudication to preclude Microsoft's

14  affirmative defense of invalidity under 35 U.S.C. §102(g) for failure to name a correct

15  inventor.  According to Lucent, if the '080 claims have a December 30, 1988 priority date,

16  the assertion by Microsoft that Dr. Anibal Ferreira is an unnamed inventor must fail

17  because Dr. Ferreira did not begin working with the named inventor of the '080 patent, Mr.

18  Johnston, until sometime after the claimed priority date.  Based on the denial of the motion

19  on priority date, this motion too is **DENIED**.[7]

20  Lucent also has moved for summary adjudication to preclude Microsoft's

21  affirmative defense that Dr. Ferreira and Fraunhofer are necessary parties based on their

22  alleged co-ownership of the '080 patent.  Lucent rests its arguments solely on the issue of

23  the priority date, arguing that because the '080 patent claims priority to December 30,

24

25  [7] Even if the decision for this issue did not rest solely on its linkage to the motion on priority
26  date, Lucent's motion to preclude this affirmative defense would still fail.  Microsoft has provided evidence that raises issues of triable fact as to whether Dr. Ferreira is an inventor, including notebook
27  records and alleged contributions to the drafting of the original '938 patent that later became the '080 reissue.

28  16

1   1988, this pre-dates the AT&T-Fraunhofer collaboration and thus the patent cannot be co-

2   owned. Because, as explained above, the Court denies summary adjudication on the issue

3   of priority date, Lucent's motion to preclude Microsoft's co-ownership defense also is

4   **DENIED**.

5            **4.     No patent exhaustion/implied license**

6        Lucent's motion to preclude Microsoft from going forward on these defenses are

7   common to the '457 and '080 summary judgment motions. For the same reasons as

8   discussed above with respect to the '457 patent, Lucent's motion to preclude Microsoft

9   from going forward on the defenses of patent exhaustion and implied license with respect

10   to the '080 patent is **GRANTED**.

11            **5.     Invention date**

12        Lucent contends that the invention date of the claims in the '080 patent is January

13   1987,[8] based on evidence of reduction to practice of the invention by named inventor

14   Johnston. According to Lucent, Johnston recorded a description of the "Perpetual

15   Transform Coder" and its testing on April 2, 1987. The Perpetual Transform Coder

16   allegedly performs all of the steps of the methods claimed in the '080 patent. Microsoft

17   contends that summary adjudication on this issue is inappropriate because Lucent has not

18   offered any evidence on this issue that would independently corroborate the evidence from

19   Johnston.

20        "The person who first conceives, and, in a mental sense, first invents may date his

21   patentable invention back to the time of its conception, if he connects the conception with

22   its reduction to practice by reasonable diligence on his part, so that they are substantially

23   one continuous act." Mahurkar v. C.R. Bard, Inc., 79 F.3d 1572, 1577 (Fed. Cir. 1996)

24   (internal quotes omitted). However, uncorroborated evidence from the inventor, such as

25

26        [8] Lucent does not provide an exact date in January 1987; it relies on testimony of the inventor

27   that he made an embodiment of the invention, the Perpetual Transform Coder about three months
before his technical memo recorded on April 2, 1987.

28                    17

1   inventor testimony and unwitnessed notebooks, is not sufficient to establish reduction to

2   practice. See Medichem, S.A. v. Rolabo, S.L., 437 F.3d 1157, 1169-70 (Fed. Cir. 2006).

3   Since Lucent has offered exclusively inventor-based evidence (or at least questions of fact

4   remain as to its corroboration), this evidence is insufficient to support summary

5   adjudication. Therefore, Lucent's motion is **DENIED**.

6             **6.     Availability of post-1987 §102(a),(e) art**

7         Based on its contention of a 1987 invention date, Lucent moves the Court for

8   summary adjudication that certain references cannot be prior art since they were published

9   and/or filed after 1987. These include a Brandenburg paper entitled "Low Bit Rate Codecs

10  For Audio Signals Implementation in Real Time" (published November 1988), U.S. Patent

11  No. 4,942,607 (filed on February 3, 1988) , and U.S. Patent No. 5,924,060 and its foreign

12  counterparts (filed March 10, 1988). Since, as discussed above, the motion as to the 1987

13  invention date is denied, the Court also **DENIES** the motion regarding these prior art

14  references.

15            **7.     No anticipation**

16        Lucent moves the Court for summary adjudication that the "OCF," "ATC," and

17  "MSC" references do not anticipate the '080 patent because they do not disclose an

18  absolute hearing threshold (AHT). The two sets of OCF (Optimum Coding in the

19  Frequency Domain) references at issue are U.S. Patent No. 5,924,060 ("the '060 patent")

20  and its foreign WIPO counterpart and an article entitled "OCF- A New Algorithm for High

21  Quality Sound Signals" ("the OCF Paper"). With respect to the MSC/ATC systems, there

22  are also two sets of references at issue, Dr. Krahe's German Patent No. 3506912 and its

23  EPO counterparts and German Patent No. 3621513 and its EPO counterparts (collectively,

24  "Krahe II").

25        At the heart of this issue is a dispute between Lucent's and Microsoft's experts as to

26  whether the prior art discloses an AHT as construed by the Court. Additionally, the parties

27  and their experts dispute whether the references themselves disclose the subject matter of

28                       18

the claims or whether some actual implementation of the algorithms disclosed in the
references is anticipatory. The issue comes down to the battle of the experts. Therefore, the
existing issues of genuine material fact preclude summary adjudication; Lucent's motion is
**DENIED**.

### 8. No invalidity for indefiniteness

The arguments presented by the parties mirror those presented with respect to this
issue in the context of the '457 patent. Therefore, for the reasons explained therein,
Lucent's motion as it pertains to the '080 patent is **GRANTED**.

### 9. No Equitable Estoppel/Waiver/Implied License, Laches, and Patent Misuse

Lucent's and Microsoft's arguments pertaining to these issues are the same as raised
in reference to the '457 patent. For the same reasons as discussed with reference to the
'457 patent, Lucent's motions to preclude these affirmative defenses with respect to the
'080 patent are **GRANTED**.

### 10. Date of actual notice as Apr. 8, 2003

Similar to the motions made with respect to the '457 patent, Lucent moves the Court
to grant summary adjudication that April 8, 2003 is the date of actual notice of
infringement and thus the date to trigger damages for infringement of the '080 patent.
Microsoft responds that the notice must come directly from the patentee and hence, May 9,
2003, is the triggering date. For the reasons, explained with reference to the '457 patent,
Lucent's motion is **DENIED**.

### E. Microsoft's motion for summary adjudication on the '080 patent

### 1. No Infringement by fast encoder and cyberlink

Microsoft moves the court to grant summary judgment of no infringement of the
'080 patent by the accused devices, Windows Media Players 10 and 11 (WMP10, WMP11,
respectively) and the software therein, the fast encoder and a "plug-in" software cyberlink,
which perform the steps of encoding audio files into MP3 files. The central issue in dispute

19

between the parties is whether the accused products use an absolute hearing threshold

(AHT) as required by the claims of the '080 patent. Each side has presented expert

testimony supporting its position. Moreover, although Microsoft argues for several reasons

why the opinion of Lucent's expert Dr. Jayant should not be given any weight, this

argument is not sufficient to sustain summary adjudication of no infringement; credibility

determinations and the weight particular testimony should be accorded are left to the trier

of fact. See T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631

(9th Cir.1987) ("the court may not assess the credibility of this evidence nor weigh against

it any conflicting evidence presented by the moving party"). Thus, given the dispute

between the experts' infringement analyses, genuine issues of material fact remain.

Additionally, Microsoft's reliance on the recent case, Dolby Technologies, Inc. v.

Lucent Technology, Inc. in the Northern District as a basis for non-infringement is

similarly unavailing.[9] Although Dolby dealt with allegations of infringement of the '938

patent (the predecessor to the '080 reissue), there is no collateral estoppel; the products at

issue there were Dolby's, not the Microsoft products that stand accused here. Therefore,

Microsoft's motion is **DENIED**.

### 2.    No Infringement by the HQ encoder

Microsoft raises arguments in parallel to those raised with the respect to the '457

patent as to why the HQ encoder does not infringe the '080 patent.   First, Microsoft

contends that the HQ encoder cannot infringe because it is never used.  Second, Microsoft

contends that it is impossible for the HQ encoder to meet limitations (b) and (d) of claim 1

because it does not use a set of frequency coefficients but rather uses multiple frequency

coefficients that are "mixed and matched." As with the '457 patent, Lucent has raised

sufficient issues of triable fact to preclude summary adjudication on these grounds.

Therefore, Microsoft's motion is **DENIED**.

---

[9] Dolby Technologies, Inc. v. Lucent Technology, Inc., No. C 01-20709 (N.D. Cal. 2005)(Order granting summary judgment of non-infringement, Apr. 22, 2005).

1

### 3.   Invalidity- anticipation

2      "[A] moving party seeking to invalidate a patent at summary judgment must submit

3 such clear and convincing evidence of invalidity so that no reasonable jury could find

4 otherwise." Eli Lilly and Co. v. Barr Laboratories, Inc., 251 F.3d 955, 962 (Fed. Cir.

5 2001). For the defense of anticipation, the defendant must show that a reference must

6 discloses every element of the claim at issue and enables one of skill in the art to make the

7 disclosed subject matter. PPG Industries, Inc. v. Guardian Industries Corp., 75 F.3d 1558,

8 1566 (Fed. Cir.1996).  The disclosure need not be explicit:  "A reference anticipates a claim

9 if it discloses the claimed invention such that a skilled artisan could take its teachings in

10 combination with his own knowledge of the particular art and be in possession of the

11 invention." In re Graves, 69 F.3d 1147, 1152 (Fed. Cir. 1995). Where extrinsic evidence is

12 used to support anticipation, it "must make clear that the missing descriptive matter is

13 *necessarily* present in the thing described in the reference, and that it would be so

14 recognized by persons of ordinary skill." Continental Can Co. USA, Inc. v. Monsanto Co.,

15 948 F.2d 1264, 1268 -69 (Fed. Cir. 1991) (emphasis added).

16      Here, Microsoft contends that Dr. Brandenburg's 1987 OCF Paper ("the OCF

17 paper") anticipates the '080 patent.  Microsoft argues that although the term AHT is not

18 explicitly mentioned, it is implied where the OCF Paper refers to a masking threshold and

19 "reducing irrelevancy by using psychoacoustical facts." According to Microsoft's expert

20 Dr. Schroeder, one of ordinary skill in the art would understand the OCF Paper to include

21 both a masking threshold and an AHT.

22      Lucent's response, however, raises sufficient issues of genuine material fact that an

23 AHT is not *necessarily* present in the OCF Paper and thus there is no anticipation.  Lucent

24 points to references which it claims disclose a masking threshold independent from an

25 AHT, as well as testimony from two experts, Drs. Brandenberg and Schroeder, stating that

26 the OCF Paper does not describe the use of an AHT.  Therefore, the Court **DENIES**

27 Microsoft's motion.

28                                              21

1

### 4.   Invalidity - obviousness

2   Microsoft contends that the combination of the OCF Paper, the knowledge of one

3   skilled in the art and the motivation to add an AHT provided by "the very nature of the

4   problem that both the OCF and the '080 patent sought to solve" render the '080 patent

5   obvious.

6   To demonstrate obviousness, Microsoft must show that one of ordinary skill in the

7   art would have been motivated to select and combine the prior art to arrive at the claimed

8   invention at the time the invention is made. In re Kahn, 441 F.3d 977, 986 (Fed. Cir. 2006).

9   The latter phrase, "at the time the invention was made" protects against the use of hindsight

10   analysis. Id.

11   To determine the relevant art in the consideration of obviousness, "the court must

12   look to the nature of the problem confronting the inventor." Bancorp Services, L.L.C. v.

13   Hartford Life Ins. Co., 359 F.3d 1367, 1375 (Fed. Cir. 2004).  Here, although both parties

14   admit an AHT was known, Lucent disputes that it was known in the *relevant* art.

15   According to Lucent, an AHT was known in the field of psychoacoustics, not audio coding.

16   This assertion seems belied by the OCF Paper itself which refers to the use of

17   psychoacoustical facts in audio coding to address the problem of redundancy.  Hence, this

18   point appears not to raise a genuine issue of material fact.

19   As for motivation to combine, the parties and their experts strongly disagree.

20   Microsoft points to references in the OCF paper as well as the nature of the problem that

21   would motivate the combination.  Lucent disputes this evidence, arguing that the references

22   in the OCF paper do not speak to the use of an AHT as claimed in the '080 patent and that

23   Microsoft has applied impermissible hindsight to the obviousness analysis.  In sum,

24   Microsoft's proffered evidence on this issue falls short of its clear and convincing burden

25   and additionally, Lucent has pointed to sufficient issues of triable fact to preclude summary

26   adjudication.  Microsoft's motion is therefore **DENIED**.

27

28                                                22

### 5.     Double patenting

Obvious-type double patenting addresses whether the claims of the patent at issue are patentably distinct from the claims of an earlier-filed commonly-owned patent. In re Longi, 759 F.2d 887, 892 (Fed. Cir.1985). "[T]he fundamental reason for the rule [of obviousness-type double patenting] is to prevent unjustified timewise extension of the right to exclude granted by a patent no matter how the extension is brought about." Eli Lilly and Co. v. Barr Laboratories, Inc., 251 F.3d 955, 968 (Fed. Cir.2001). To assess obvious-type double patenting, the court construes the claims of the two patents and determines the differences between the claims of the earlier patent and the one at issue. Then the court determines whether these differences render the later claims patentably distinct (i.e., not anticipated or obvious by the earlier claims). Id. If the claims of the later patent are not patentably distinct, double patenting exists and the claims are invalid. Id.

Here, Microsoft argues that the claims of the '080 patent are invalid for obvious-type double patenting over claims 1, 4 and 6 of the '457 patent. Microsoft alleges that claim 1 of the '457 patent teaches a frequency transform and a masking threshold; claim 4 of the '457 patent teaches coding quantized frequency coefficients; and claim 6 of the '457 patent teaches an iterative rate loop. According to Microsoft, if all of these elements are combined, all that is missing is the teaching of an AHT, which was known to one of skill in the art.

Microsoft's double patenting contention is problematic. The heart of double patenting encompasses the argument that two patents claim the same thing or an obvious variation of the same. General Foods Corp. v. Studiengesellschaft Kohle mbH, 972 F.2d 1272, 1280 (Fed Cir. 1992). The claims are compared as a whole, claim-by-claim, between the patents, "paying careful attention to the rules of claim interpretation to determine what invention a claim defines and not looking to the claim for anything that happens to be mentioned in it as though it were a prior art reference." Id.

Here, Microsoft has done exactly what the Federal Circuit has forbidden: Microsoft

1     extracts "disclosures" from parts of claims 1, 4, and 6 of the '457 patent and amasses them

2     together to arrive at the '080 claims.  Therefore, Microsoft has not met its burden to

3     demonstrate that the claims of the '080 patent when properly compared in their entirety are

4     the same method or an obvious variation of the '457 claims. Therefore, Microsoft's motion

5     for summary adjudication of double patenting is **DENIED**.

6

7        **IT IS SO ORDERED**

8

9

10   DATED:   January 11, 2007

11                                     Hon. Rudi M. Brewster
                                       United States Senior District Judge

12

13

14   cc:  Hon. Cathy Ann Bencivengo
           United States Magistrate Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28                             24