# EXHIBIT A

# PATENT LICENSE AGREEMENT
## mp3 Codec

This Patent License Agreement (hereinafter referred to as this "AGREEMENT") dated as of the EFFECTIVE DATE (as hereinafter defined) is made and entered into

between

**SanDisk Corporation**, a corporation duly organized and existing under the laws of the State of Delaware, United States of America and having its principal office and place of business at 140 Caspian Court, Sunnyvale, California 94089-1000, USA,
(hereinafter referred to as "LICENSEE")

and

**Thomson Licensing**, a company duly organized and existing under the laws of the Republic of France and having its principal office and place of business at 46, Quai Alphonse Le Gallo, 92100 Boulogne-Billancourt, France,
(hereinafter referred to as "TL").

## WITNESSETH:

WHEREAS,

> TL has the right to grant licenses under certain patents and patent applications owned by TL and TL's AFFILIATES (as hereinafter defined) relating to MPEG Layer-3; and

WHEREAS,

> TL has acquired the right to sublicense certain patents and patent applications owned by Fraunhofer Gesellschaft zur Förderung der Angewandten Forschung e.V., Munich, Germany (hereinafter referred to as "FHG") relating to MPEG Layer-3; and

WHEREAS,

> LICENSEE has developed and will continue to develop, with its own resources, products utilizing MPEG Layer-3, without having received any particular know-how and/or software from TL, TL's AFFILIATES and/or FHG; and

WHEREAS,

> LICENSEE desires to obtain the right to make, manufacture, sell and/or use certain products incorporating inventions protected by such patents and patent applications and has requested that TL grants to LICENSEE a license relating to such products under such patents and patent applications; and

MPEG/US/TL/Sandisk (mp3 Codec PLA) 03/02/2006
(33986_1.DOC)

WHEREAS,

TL is willing to grant such license to LICENSEE.

NOW THEREFORE,

in consideration of the premises and the faithful performance of the mutual covenants hereinafter set forth, the parties hereto hereby agree as follows:

## 1.    DEFINITIONS

For the purpose of this AGREEMENT, the following terms when used with a capital initial letter shall have the respective meanings set forth below:

1.1.    "MP3 FUNCTIONALITY" means MPEG Layer-3 audio coding technology, which complies with the specifications and operating parameters established by the Joint Technical Committee of the International Standards Organization as described in ISO/IEC IS 11172-3 and ISO/IEC IS 13818-3.

1.2.    "LICENSED HARDWARE DECODERS" means complete, ready-to-use hardware products that are developed and intended as finished goods for end users, primarily marketed, by or for LICENSEE and/or LICENSEE's AFFILIATES, under an established or registered trade name or trademark of LICENSEE and/or LICENSEE's AFFILIATES, capable of decoding data, but not of encoding any kind of data utilizing MP3 FUNCTIONALITY and covered by one or more of the LICENSED PATENTS.

For the avoidance of doubt, LICENSED HARDWARE DECODERS shall only mean complete, ready-to-use **hardware** products (i.e., finished goods for end users), but shall **not** mean any other products.

1.3.    "LICENSED OEM HARDWARE DECODERS" means complete, ready-to-use hardware products that are developed and intended as finished goods for end users, marketed under an established or registered trade name or trademark of a third party, manufactured by LICENSEE and/or LICENSEE's AFFILIATES for such third party, capable of decoding data, but not of encoding any kind of data utilizing MP3 FUNCTIONALITY and covered by one or more of the LICENSED PATENTS.

For the avoidance of doubt, LICENSED OEM HARDWARE DECODERS shall only mean complete, ready-to-use **hardware** products (i.e., finished goods for end users), but shall **not** mean any other products.

1.4.    "LICENSED HARDWARE CODECS" means complete, ready-to-use hardware products that are developed and intended as finished goods for end users, primarily marketed, by or for LICENSEE and/or LICENSEE's AFFILIATES, under an established or registered trade name or trademark of LICENSEE and/or LICENSEE's AFFILIATES, capable of encoding - and optionally decoding - data utilizing MP3 FUNCTIONALITY and covered by one or more of the LICENSED PATENTS.

For the avoidance of doubt, LICENSED HARDWARE CODECS shall only mean complete, ready-to-use **hardware** products (i.e., finished goods for end users), but shall **not** mean any other products.

1.5.    "LICENSED OEM HARDWARE CODECS" means complete, ready-to-use hardware products that are developed and intended as finished goods for end users, marketed under an established or registered trade name or trademark of a third

party, manufactured by LICENSEE and/or LICENSEE'S AFFILIATES for such third party, capable of encoding - and optionally decoding - data utilizing MP3 FUNCTIONALITY and covered by one or more of the LICENSED PATENTS.

For the avoidance of doubt, LICENSED OEM HARDWARE CODECS shall only mean complete, ready-to-use **hardware** products (i.e., finished goods for end users), but shall **not** mean any other products.

1.6.   "LICENSED OEM HARDWARE PRODUCTS" means LICENSED OEM HARDWARE DECODERS and/or LICENSED OEM HARDWARE CODECS.

1.7.   "LICENSED PRODUCTS" means LICENSED HARDWARE DECODERS and/or LICENSED HARDWARE CODECS and/or LICENSED OEM HARDWARE PRODUCTS.

1.8.   "LICENSED PATENTS" means all patents or patent applications covering MP3 FUNCTIONALITY, which TL and/or TL's AFFILIATES own during the term of this AGREEMENT, or to which TL and/or TL's AFFILIATES have obtained the sublicensing right from FHG, including, but not limited to, the patents and patent applications listed on http://mp3licensing.com/patents/ and any continuations, continuations-in-part, reissues, reexaminations, divisionals or corresponding applications or patents that issue therefrom in any jurisdiction in the world.

1.9.   "THIRD PARTY LICENSED MP3 COMPONENTS" means unfinished hardware goods (such as semiconductor devices and printed circuit boards) that are developed and intended as components for ready-to-use hardware products (i.e., finished goods for end users), capable of encoding and/or decoding data utilizing MP3 FUNCTIONALITY, provided by third parties that are duly licensed by TL under the LICENSED PATENTS to make, manufacture, sell and/or use such components.

1.10.  "CONTROL" means that an entity directly or indirectly owns and/or controls more than 50 % (fifty percent) in nominal value of the issued equity share capital of another entity, or more than 50 % (fifty percent) of the shares entitled to vote upon the election of:

(i)   the directors, or

(ii)   persons performing functions similar to those performed by directors, or

(iii)   persons otherwise having the right to elect or appoint (a) directors having the majority vote of the Board of Directors or (b) other persons having the majority vote of the highest and most potent directive body, of such other entity.

1.11.  "LICENSEE'S AFFILIATES" means any company, which is CONTROLLED by LICENSEE, but only for as long as such CONTROL exists.

1.12.  "TL's AFFILIATES" means any company, which is CONTROLLED by TL or by Thomson S.A. (formerly Thomson multimedia S.A.), Boulogne-Billancourt, France, the parent company of TL, but only for as long as such CONTROL exists.

1.13.  "EFFECTIVE DATE" means January 01, 2006.

1.14.  "SIGNATURE DATE" means the date upon which the last of the parties hereto has signed this AGREEMENT.

2.   GRANT OF RIGHT AND LICENSE

2.1.   Subject to and conditioned upon receipt of the payment by LICENSEE of the amount set forth in Article 3.1., TL waives all claims under the LICENSED

PATENTS relating to MP3 FUNCTIONALITY, which it may have against LICENSEE and/or LICENSEE'S AFFILIATES for the manufacture, sale, offer for sale, import and/or use by or for LICENSEE and/or LICENSEE'S AFFILIATES of a maximum of 142 995 (in words: one hundred forty two thousand nine hundred ninety five) units or copies of LICENSED PRODUCTS prior to the EFFECTIVE DATE.

Subject to and conditioned upon receipt of the payment by LICENSEE of the amount set forth in Article 3.1, this Article 2.1 will survive any termination or expiration of this AGREEMENT.

2.2.    As of the EFFECTIVE DATE, TL hereby grants LICENSEE and LICENSEE'S AFFILIATES a worldwide, non-exclusive and (except as otherwise provided in Article 8.2. with respect to LICENSEE's limited right to transfer or assign the same) non-transferable, non-assignable license, under the LICENSED PATENTS, without the right to sublicense:

(i)   to make and/or manufacture, and to authorize others to make and/or manufacture (solely for LICENSEE and/or LICENSEE'S AFFILIATES), LICENSED PRODUCTS; and

(ii)  to sell, offer for sale, import and/or use such LICENSED PRODUCTS.

2.3.    **Notwithstanding anything in this AGREEMENT to the contrary, the licenses granted with respect to LICENSED HARDWARE CODECS and/or LICENSED OEM HARDWARE CODECS do not convey a license nor imply any right to distribute content created with LICENSED HARDWARE CODECS and/or LICENSED OEM HARDWARE CODECS in revenue-generating broadcast systems (terrestrial, satellite, cable and/or other distribution channels), streaming applications (via Internet, intranets and/or other networks), other content distribution systems (pay-audio or audio-on-demand applications and the like) or on physical media (compact discs, digital versatile discs, semiconductor chips, hard drives, memory cards and the like).**

LICENSEE and/or LICENSEE'S AFFILIATES shall provide the following or equivalent notice in all user manuals, data sheets, application notes, associated documentation and the like relating to LICENSED HARDWARE CODECS and/or LICENSED OEM HARDWARE CODECS:

*"Supply of this product does not convey a license nor imply any right to distribute content created with this product in revenue-generating broadcast systems (terrestrial, satellite, cable and/or other distribution channels), streaming applications (via Internet, intranets and/or other networks), other content distribution systems (pay-audio or audio-on-demand applications and the like) or on physical media (compact discs, digital versatile discs, semiconductor chips, hard drives, memory cards and the like). An independent license for such use is required. For details, please visit http://mp3licensing.com."*

2.4.    **Notwithstanding anything in this AGREEMENT to the contrary, no license is granted, and no act or acts hereunder shall be construed as or result in conveying any license to LICENSEE, LICENSEE'S AFFILIATES and/or any third party, expressly or by implication, estoppel or otherwise, excepting the licenses expressly granted to LICENSEE and/or LICENSEE'S AFFILIATES under this AGREEMENT.**

Further, the licenses granted under this AGREEMENT are limited to using and/or implementing MP3 FUNCTIONALITY in LICENSED PRODUCTS and do not convey a license to use and/or implement any other audio coding technology in LICENSED PRODUCTS.

3.     CONSIDERATION - CALCULATION AND TERMS OF PAYMENT

3.1.

3.2.                           **REDACTED**

                               **REDACTED**

3.2.1.

3.2.2.

**REDACTED**

3.2.2.

3.2.3.

**REDACTED**

3.2.4.

3.2.5.

3.3.

**REDACTED**

3.4.

3.4.1.

**REDACTED**

3.4.2.

3.5.

3.5.1.

**REDACTED**

3.5.2.

3.6.

**REDACTED**

3.7.             **REDACTED**

3.8.

                **REDACTED**

3.9.

                **REDACTED**

3.10.

# REDACTED

3.11.

## 4.    TRADEMARKS

Neither party shall be entitled to use in its advertising, publicity or otherwise the other party's trademarks or trade names in any manner or form, except as otherwise agreed in writing, e.g., for the purpose of patent marking.

## 5.    LIMITATIONS

5.1.    Nothing in this AGREEMENT shall constitute or be construed as:

    (i)    a warranty or representation by TL and/or FHG as to the validity, enforceability or scope of any of the LICENSED PATENTS; or

    (ii)   a requirement that TL and/or FHG shall file any patent application, secure any patent or maintain any patent in force; or

    (iii)  an obligation on the part of TL and/or FHG to furnish any technical information, technical support, software of any kind or any information concerning pending patent applications of TL and/or FHG.

5.2.    If any patent included in the LICENSED PATENTS is declared void or unenforceable, any payment accrued and/or made by LICENSEE under Article 3. prior to such event shall remain due and/or will not be reimbursed to LICENSEE.

5.3.    TL and/or FHG make no representation, extend no warranties or indemnification of any kind, express or implied, nor assume any responsibilities whatsoever with respect to the commercial utility of any of the LICENSED PATENTS and/or LICENSED PRODUCTS or with respect to the manufacture, sale, use and/or other disposition by LICENSEE, LICENSEE'S AFFILIATES and/or their vendors, vendees or transferees of products incorporating or made by use of inventions licensed under this AGREEMENT.

5.4.    The licenses granted under this AGREEMENT do not extend to nor grant any implied license for the manufacture, sale, use, lease and/or other disposal of materials, recording machines, apparatus and methods for the reproduction or duplication of LICENSED PRODUCTS.

5.5.    Nothing in this AGREEMENT shall constitute or be construed as a warranty or representation by TL and/or FHG that any of the LICENSED PATENTS and/or LICENSED PRODUCTS are free from claims of infringement of any patent or other intellectual property right owned by any third party arising out of the

manufacture, sale and/or use of the LICENSED PRODUCTS by or for LICENSEE and/or LICENSEE'S AFFILIATES.

5.6.    Product liability with respect to any LICENSED PRODUCT made, manufactured, sold and/or used by or for LICENSEE and/or LICENSEE'S AFFILIATES shall be the sole responsibility of LICENSEE and/or LICENSEE'S AFFILIATES to the extent permitted by law. LICENSEE agrees to hold harmless TL and/or FHG from any claim or alleged claim of third parties in this respect.

5.7.    TL represents and warrants herewith that TL is duly authorized and entitled to grant the licenses stipulated in this AGREEMENT under the LICENSED PATENTS.

5.8.    Except with respect to a party's breach of confidentiality obligations hereunder, in no event shall either party be liable to the other party for any indirect, incidental, special, or consequential damages, whether in an action in contract or tort (including strict liability), based on a warranty, or otherwise, arising out of or in connection with this AGREEMENT, even if such party had been advised of the possibility of such damages

## 6.    DURATION AND TERMINATION OF AGREEMENT

6.1.    After the last of the parties hereto has signed this AGREEMENT, this AGREEMENT shall be effective as of the EFFECTIVE DATE and continue in full force and effect until the expiration of the last to expire of the LICENSED PATENTS.

Upon termination of this AGREEMENT prior to the expiration of the last to expire of the LICENSED PATENTS all rights and licenses granted to LICENSEE and/or LICENSEE'S AFFILIATES under this AGREEMENT shall automatically terminate and LICENSEE and/or LICENSEE'S AFFILIATES shall immediately cease distribution of all LICENSED PRODUCTS. TL shall have the right to retain all amounts paid by LICENSEE hereunder, and LICENSEE shall pay all amounts accrued but unpaid within one (1) month thereafter.

6.2.    In the event a party hereto substantially fails to comply with any of its obligations under this AGREEMENT or of any Annex hereto and does not remedy the failure of performance within one (1) month after it has been notified in writing thereof, the other party may, by written notice, terminate this AGREEMENT at the end of said period, without prejudice to any damages or legal redress to which it may be entitled. Any such termination shall not affect payments, the rights to which have fallen due under this AGREEMENT prior to such termination, or the furnishing of statements and explanatory information as provided in Article 3.

6.3.    Should either party hereto become insolvent or be subjected to bankruptcy or winding up proceedings, the other party may, by written notice, terminate this AGREEMENT immediately.

6.4.    To the extent allowed by law, TL may, by written notice, terminate this AGREEMENT immediately, in case a third party, which does not CONTROL LICENSEE as of the SIGNATURE DATE, comes to CONTROL LICENSEE after the SIGNATURE DATE.

6.5.    To the extent allowed by law, TL may, by written notice, terminate this AGREEMENT in accordance with Article 6.2., in case LICENSEE and/or LICENSEE'S AFFILIATES file a revocation, nullity action or opposition against one or more of the LICENSED PATENTS.

6.6.  Notwithstanding anything in this AGREEMENT to the contrary and further provided this AGREEMENT has not been terminated according to Articles 6.2., 6.3., 6.4. and/or 6.5., LICENSEE and/or LICENSEE'S AFFILIATES shall have the right to sell and/or use, and to authorize others to sell and/or use LICENSED PRODUCTS remaining in stock of, or in the process of manufacture by, LICENSEE, LICENSEE'S AFFILIATES and/or any third party authorized to make and/or manufacture LICENSED PRODUCTS for LICENSEE and/or LICENSEE'S AFFILIATES, provided RUNNING ROYALTY has been paid for such LICENSED PRODUCTS according to Article 3.5.

6.7.  Articles 4, 5, this 6.7, and 9 will survive any termination or expiration of this AGREEMENT.

## 7.     PATENT MARKINGS

If requested by TL and/or required by law or jurisdiction, LICENSEE, LICENSEE'S AFFILIATES and third parties authorized by LICENSEE and/or LICENSEE'S AFFILIATES to make and/or manufacture LICENSED PRODUCTS shall place appropriate patent and patent application markings on an exposed surface of the packaging of each LICENSED PRODUCT, as well as in all user manuals, data sheets, application notes, associated documentation and the like relating to LICENSED PRODUCTS.

The content, form, location and language used in such markings shall be in accordance with the laws and practices of the country where such markings are used.

LICENSEE shall include the following credits text in all user manuals, data sheets, application notes, associated documentation and the like relating to LICENSED PRODUCTS:

"*MPEG Layer-3 audio coding technology licensed from Fraunhofer IIS and Thomson.*"

## 8.     ASSIGNMENT

8.1.  TL may assign this AGREEMENT to any other company, person, firm or entity, provided, however, that TL shall give notice of such assignment to LICENSEE and that all of the terms and conditions of this AGREEMENT shall be binding upon such assignee.

8.2.  LICENSEE may not assign or transfer this AGREEMENT in part or in its entirety to any third party without the prior written consent of TL. Such consent shall not be unreasonably withheld or delayed but TL may withhold such consent in those cases where TL reasonably believes TL's business interests are harmed by such assignment, especially in the scope of MPEG Layer- 3 intellectual property licensing.

Notwithstanding the foregoing general restriction on assignment, LICENSEE may, upon five (5) days advance written notice to TL, assign this AGREEMENT to LICENSEE'S AFFILIATE.

In the event TL reasonably determines that the business interests of TL are materially harmed by such assignment, especially in the scope of MPEG Layer-3 intellectual property licensing, TL shall, within fifteen (15) days, notify LICENSEE in writing of such determination.  Upon receipt of such notice by LICENSEE, TL and LICENSEE shall discuss in good faith the harm to TL's business interests and, within thirty (30) days of such notice, unless the parties agree otherwise in writing, such LICENSEE AFFILIATE shall assign this AGREEMENT back to LICENSEE.

Subject to the above restrictions on assignment, all terms and conditions of this AGREEMENT shall inure to the benefit of and bind successors and assigns of LICENSEE.

Any actual or attempted assignment in contravention of this Article 8.2. shall be null and void.

## 9.  MISCELLANEOUS PROVISIONS

### 9.1.  Notices

All notices, summons and communications related to this AGREEMENT and sent by either party hereto to the other shall be written in English and shall be given in writing by letter, telex or facsimile directed,

in respect of TL to:

Thomson Licensing
46, Quai Alphonse Le Gallo
92100 Boulogne-Billancourt - France

Attn.:  Executive Vice President
Intellectual Property and Licensing
Telefax:  +33 1 4186 5638
Email:  royalties@thomson.net

in respect of LICENSEE to:

SanDisk Corporation
140 Caspian Court
M/S # 311
Sunnyvale, California 94089-1000
United States of America

Attn.:  Joe Novak
Phone:  +1 408 542 0668
Telefax:  +1 408 542 0790
Email:  jnovak@sandisk.com

or such other addresses as may have been previously specified (in the manner set forth above) in writing by either party to the other.

### 9.2.  Infringement

9.2.1.  Neither TL nor TL's AFFILIATES shall be under any liability to LICENSEE and/or LICENSEE'S AFFILIATES for infringement or alleged infringement of any patent or other intellectual property right owned or claimed by any third party arising out of the manufacture, sale and/or use of LICENSED PRODUCTS by or for LICENSEE and/or LICENSEE'S AFFILIATES.

9.2.2.  If LICENSEE shall become aware of any actual or apparent infringement of any of the LICENSED PATENTS by third parties, LICENSEE shall give prompt written notice to TL of such fact, it being understood and agreed that TL alone shall decide, in its sole discretion, whether, and if so, what, measures shall be taken as a result of any such infringement.

9.2.3.  Nothing contained in this AGREEMENT shall be construed:

(i)  as imposing on either party an obligation to institute any suit or action for infringement of any of the LICENSED PATENTS hereunder, or to defend any suit or action brought by a third party which challenges or concerns the validity of any such LICENSED PATENT hereunder;

(ii) as conferring by implication, estoppel or otherwise any right or license to copy or to simulate the appearance, trade dress and/or design of products of TL and/or TL's AFFILIATES;

(iii) as conferring by implication, estoppel or otherwise any right or license to make, manufacture, use, sell, license or otherwise dispose of products or devices other than LICENSED PRODUCTS.

### 9.3. Amendment

This AGREEMENT or any provision thereof may be amended or modified only with the mutual consent of the parties as set out in a written instrument, signed by a duly authorized officer of each of the parties, and expressly stating the parties' intent to amend this AGREEMENT.

### 9.4. Non-Waiver

If at any time a party shall elect not to assert its rights under any provision of this AGREEMENT, such action or lack of action in that respect shall not be construed as a waiver of its rights under said provision or of any other provision of this AGREEMENT.

### 9.5. Dispute Settlement

This AGREEMENT shall be governed by the laws of the Federal Republic of Germany, without giving effect to its conflict of law provisions. The courts of Munich, Germany shall have exclusive jurisdiction for purposes of interpreting and enforcing this AGREEMENT.

The institution of any proceeding shall not relieve LICENSEE of its obligation to make payments, which accrue hereunder during the continuance of such proceeding.

### 9.6. Binding Effect

This AGREEMENT shall be binding upon and shall inure to the benefit of, the parties hereto and their assigns permitted under Article 8. hereof.

9.6.

# REDACTED

### 9.7. Severability

Should any part or provision of this AGREEMENT be held unenforceable or in conflict with the law of any jurisdiction, the validity of the remaining parts or provisions shall not be affected by this holding. Such unenforceable part or provision shall then be replaced, upon mutual written consent between the parties hereto, by other enforceable part or provision, which, in its effect, corresponds or comes closest to the effect of such unenforceable part or provision.

### 9.8. Entire Agreement

This AGREEMENT including its Annex(es) embodies the entire understanding of the parties and cancels and supersedes all prior representations, warranties, or agreements between the parties relating hereto, and this AGREEMENT is executed and delivered upon the basis of this understanding.

### 9.9. Administrative Expenses

LICENSEE shall bear all costs and expenses arising in connection with payments originating from this AGREEMENT, including, but not limited to, bank charges, taxes, levies, and other additional costs of approvals for payment.

### 9.10. Confidentiality

Notwithstanding anything to the contrary in this AGREEMENT, LICENSEE and TL agree to maintain confidential the terms and conditions of this AGREEMENT.

LICENSEE and TL shall only disclose information concerning the content of this AGREEMENT on a need-to-know basis to employees of LICENSEE, LICENSEE'S AFFILIATES, TL, TL'S AFFILIATES and/or FHG for the proper implementation of this AGREEMENT.

LICENSEE and TL are entitled to disclose to third parties that LICENSEE has entered into this AGREEMENT.

IN WITNESS WHEREOF,

each of the parties hereto has caused this AGREEMENT to be executed in two (2) original copies, one (1) for LICENSEE and one (1) for TL, by its duly authorized officer or representative.

| Thomson Licensing TL | SanDisk Corporation LICENSEE |
|---|---|
| By | By |
| Béatrix de Russé Executive Vice President Intellectual Property and Licensing (name and title) | Nelson C. Chan EVP & GM Consumer Products & Corp. Mktg (name and title) |
| Boulogne-Billancourt, France February 9 , 2006 (place and date) | March 8 , 2006 (place and date) |

FTh