Jenny N. Lee (Bar No. 247684)
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California 94104-1501
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

*Attorney for Defendants*
*Lucent Technologies Inc.*
*and Alcatel-Lucent, S.A.*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | | |
|---|---|---|
| SANDISK CORPORATION, | ) | Case No. C 07-03618 JF |
| Plaintiff, | ) | |
| vs. | ) | **DEFENDANTS' OPPOSITION TO SANDISK'S MOTION FOR SUMMARY JUDGMENT** |
| LUCENT TECHNOLOGIES INC. and ALCATEL-LUCENT, S.A., | ) | |
| Defendants. | ) | Date:       November 30, 2007 |
| | ) | Time:       9:00 a.m. |
| | ) | Courtroom:  Courtroom 3, 5th Floor |
| | ) | Judge:      Hon. Jeremy Fogel |

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS...................................................................................................I

TABLE OF AUTHORITIES ......................................................................................... III

INTRODUCTION ...........................................................................................................1

FACTUAL BACKGROUND ..........................................................................................2

    A.    The Pre-Filing Interactions Between Defendants and SanDisk Were Brief and Not Substantive.......................................................................2

    B.    Despite Agreeing To Meet, SanDisk Preempts That Meeting By Filing A Declaratory Judgment Action. .......................................................3

    C.    SanDisk Rebuffs Defendants' Post-Filing Attempts To Resolve This Matter After The Adverse Microsoft Judgment. ....................................3

    D.    Defendants Move To Dismiss This Action.........................................................4

    E.    The '457 and '080 Patents. .................................................................................5

    F.    SanDisk's MP3 Players Store And Decode Audio Files. ...................................7

ARGUMENT ...................................................................................................................8

    A.    This Court Does Not Have Subject Matter Jurisdiction Over SanDisk's Claims. ..............................................................................................8

           1.    The Scant Pre-Filing Interactions Between Alcatel-Lucent and SanDisk Are Insufficient To Create A Real And Immediate Controversy........................................................................9

           2.    Post-Filing Events Demonstrate That No Real And Immediate Controversy Exists Between Alcatel-Lucent and SanDisk..........................11

    B.    This Case Does Not Warrant Application Of Collateral Estoppel But Should Instead Be Dismissed Or Stayed..........................................................12

           1.    Application Of Collateral Estoppel Against Alcatel-Lucent's Counterclaim Deprives SanDisk Of Standing. ................................12

           2.    This Court Should Exercise Its Discretion To Decline Jurisdiction Over SanDisk's Declaratory Judgment Action To Avoid Piecemeal and Potentially Unnecessary Litigation. .........................................13

    C.    In The Alternative, A Stay Of This Litigation Is Warranted Because Considerations of Judicial Economy Outweigh Any Possible Prejudice To SanDisk.......................................................................................................15

    D.    This Case Is Not Ripe For Summary Adjudication. ..........................................16

           1.    Because There Has Been No Discovery, Defendants Lack Affirmative Evidence Necessary To Oppose SanDisk's Motion. .....................................16

E.     Summary Judgment Is Inappropriate Where Genuine Issues Of Material Fact Exist ........................................................................................................19

1.     SanDisk Is Not Entitled To Summary Judgment Of No Direct Infringement Of The '080 Patent ........................................................19

2.     SanDisk Is Not Entitled To Summary Judgment Of No Direct Infringement Of The '457 Patent ........................................................21

3.     SanDisk Is Not Entitled To Summary Judgment Of No Indirect Infringement..............................................................................................23

CONCLUSION.............................................................................................................24

1
2

## <u>TABLE OF AUTHORITIES</u>

3
4

**CASES**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 n.5 (1986).................................................................................. 17

5

*Benitec Austl., Ltd. v. Nucleonics, Inc.*,
    495 F.3d 1340 (Fed. Cir. 2007)............................................................. 8, 10, 11

6
7

*Berkeley v. Home Ins. Co.*,
    314 U.S. App. D.C. 358, 68 F.3d 1409 (D.C. Cir. 1995) ...................................... 17

8

*Burlington N. Santa Fe R.R. v. Assiniboine & Sioux Tribes of the Fort Peck Reservation*,
    323 F.3d 767 (9th Cir. 2003) ...................................................................... 17, 18

9
10

*California ex rel. Cal. Dep 't of Toxic Substances v. Campbell*,
    138 F.3d 772 (9th Cir. 1998) .............................................................................. 18

11

*Caterpillar, Inc. v. Sturman Indus., Inc.*,
    387 F.3d 1358 (Fed. Cir. 2004)............................................................................ 19

12
13

*Continental Can Co. USA, Inc. v. Monsanto Co.*,
    948 F.2d 1264 (Fed. Cir. 1991)............................................................................ 19

14

*Crossbow Tech., Inc. v. YH Tech.*,
    2007 U.S. Dist. LEXIS 65646 (D. Cal. 2007) ...................................................... 8

15
16

*L.E.A. Dynatech, Inc. v. Allina*,
    49 F.3d 1527 (Fed. Cir. 1995).............................................................................. 15

17

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936)............................................................................................. 15

18
19

*Leyva v. Certified Grocers of Cal., Ltd.*,
    593 F.2d 857 (9th Cir. 2005) ............................................................................... 15

20

*Mas-Hamilton Group v. LaGard, Inc.*,
    156 F.3d 1206 (Fed. Cir. 1998)............................................................................ 19

21
22

*Metabolife Int'l, Inc. v. Wornick*,
    264 F.3d 832 (9th Cir. 2001) ............................................................................... 17

23

*Microchip Tech. Inc. v. Chamberlain Group, Inc.*,
    441 F.3d 936 (Fed. Cir. 2006).............................................................................. 11

24
25

*Online Policy Group v. Diebold, Inc.*,
    337 F.Supp.2d 1195 (N.D. Cal. 2004) ................................................................. 19

26

*Parklane Hosiery Co. v. Shore*,
    439 U.S. 322 (1979)............................................................................................. 12

27
28

*Pharmacia & Upjohn Co. v. Mylan Pharms., Inc.*,
    170 F.3d 1373 (Fed. Cir. 1999)............................................................................ 13

*Sames v. Gable*,
    732 F.2d 49 (3rd Cir. 1984) ................................................................................. 17

*SanDisk Corp. v. STMicroelectronics, Inc.*,
    480 F.3d 1372 (Fed. Cir. 2007)....................................................................... 8, 9, 10

*Serco Serv. Co. v. L.P. & Kelley Co.*,
    51 F.3d 1037 (Fed. Cir. 1995) ............................................................................. 15

*SRI Int'l. v. Matsushita Elec. Corp. of America*,
    775 F.2d 1107 (Fed. Cir. 1985)............................................................................. 20

*Stern v. U.S.*,
    563 F. Supp. 484 (D. Nev. 1983) .......................................................................... 13

*United States v. Kitsap Physicians Serv.*,
    314 F.3d 995 (9th Cir. 2002) ................................................................................ 16

*Wichita Falls Office Assoc. v. Banc One Corp.*,
    978 F.2d 915 n.4 (5th Cir. 1992) .......................................................................... 17

*Wilton v. Seven Falls Co.*,
    515 U.S. 277 (1995)......................................................................................... 8, 15

*Wing Shing Prods. (BVI) Ltd. v. Simatelex Manu. Co.*,
    Case No. Civ. 1044 (RJH) (HBP), 2005 WL 912184 (S.D.N.Y. Apr 19, 2005)................... 16

**STATUTES**

28 U.S.C. § 2201(a) ................................................................................................. 8

**RULES**

Fed. R. Civ. P 56(f) ........................................................................................ 1, 17, 19

Fed. R. Civ. P. 12 ................................................................................................... 4

Fed. R. Civ. P. 12(b)(1) ........................................................................................... 5

Fed. R. Civ. P. 12(b)(6).......................................................................................... 5

Fed. R. Civ. P. 26(f) .............................................................................................. 16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **INTRODUCTION**

In seeking summary judgment, SanDisk asserts that the "controversy" it cobbled together from three brief exchanges between Defendants and SanDisk is real, immediate, and amenable to resolution now.  SanDisk is wrong.

First, no cognizable controversy exists that need be resolved now.  Even accepting that the brief exchanges between Defendants and SanDisk before July 13, 2007 provided sufficient support for SanDisk's declaratory judgment complaint — and Defendants do not concede that they do — no such controversy can exist now.  Events subsequent to the filing of SanDisk's complaint, including a judgment in another case involving the patents-in-suit, a pending appeal of that judgment, Defendants' offer to stand down pending resolution of that appeal, and the issues identified in SanDisk's co-pending motion to dismiss, demonstrate that SanDisk's declaratory-judgment claims now lack reality and immediacy.  Absent a cognizable controversy, SanDisk's motion is no more than a request for an impermissible advisory opinion.

Second, even if a controversy amenable to adjudication existed, resolution by summary judgment now is not appropriate because Defendants have not had the opportunity to seek discovery of issues central to opposition.  Because no discovery has been taken, Defendants' ability to present its opposition to SanDisk's motion is severely constrained.  Indeed, SanDisk relies on affidavit evidence regarding the nature and operation of its MP3 players in support of its motion without affording Defendants the opportunity to seek any discovery that might refute that evidence.  Where summary judgment is filed at very early stages of a litigation, the Ninth Circuit directs its district courts to, at a minimum, hold briefing in abeyance pending discovery.  Accordingly, Defendants move this Court under Fed. R. Civ. P 56(f) to obtain the discovery necessary to prepare a complete response.

Third, even without discovery an examination of SanDisk's publicly available MP3 players, and the included documentation and software, demonstrates that there are genuine issues of material fact precluding summary judgment of noninfringement.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# FACTUAL BACKGROUND

### A.    The Pre-Filing Interactions Between Defendants and SanDisk Were Brief and Not Substantive.

Alcatel-Lucent — formed in late 2006 through the merger of Alcatel and Lucent — possesses an extensive patent portfolio that it licenses to companies in a wide variety of industries.[1] On May 11, 2007, Alcatel-Lucent's Licensing Director, June Sulovski, sent a letter to SanDisk's Chairman and Chief Executive Officer, offering SanDisk "a non-exclusive patent license to Alcatel-Lucent's patents for MP3 technology." *See* Declaration of William C. Mercer ("Mercer Decl."), Ex. A. Ms. Sulovski informed SanDisk that Alcatel-Lucent had available for license "a number of patents relating to MP3 technology, including U.S. Patent No. 5,341,457 and U.S. Reissue Patent No. Re 39,080." *Id.* While Ms. Sulovski also noted that Alcatel-Lucent "believe[d] that SanDisk should consider acquiring a license for its digital multimedia players with MP3 capabilities such as those listed in [an] attached table," the letter made no allegation that any of these players, or any SanDisk activity, infringed either the '457 or '080 patents. *Id.* Ms. Sulovski closed the letter by inviting SanDisk to enter further discussion regarding a potential license and to address Sandisk's response to Mr. Ivan Chaperot, Alcatel-Lucent's Senior Licensing Manager. *Id.*

After several weeks elapsed without a response, Mr. Chaperot e-mailed SanDisk requesting that SanDisk direct Mr. Chaperot to the "person in charge of inbound licensing." *See* Mercer Decl., Ex. B. The next day SanDisk's litigation counsel responded to Mr. Chaperot's email, stating that "[o]nce we have had sufficient time to complete a thorough investigation into the applicability of your patents, we will get back to you promptly." *Id.* SanDisk's litigation counsel also asked that "[i]f you are asserting infringement of specific claims of U.S. Patent No. 5,341,457 and U.S. Reissue Patent No. Re.39,080, please advise us of such claims and the particulars of the alleged infringement." *Id.*

---

[1] Lucent Technologies Inc. is now an indirect, wholly owned subsidiary of Alcatel SA, which was renamed Alcatel-Lucent upon completion of the merger.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Mr. Chaperot responded several days later, but did not make any assertion of infringement of either the '457 or '080 patents. *Id.* To aid SanDisk's analysis, however, Mr. Chaperot did point out that "these patents were involved in a litigation against Microsoft" and identified the "specific claims [that] were found valid and infringed" in that litigation. *Id.* Mr. Chaperot did not suggest that the Microsoft litigation result impacted SanDisk's products or activities, but rather "reiterate[ed] [Alcatel-Lucent's] offer to initiate a business discussion." *Id.*

Two days later, SanDisk accepted that offer by "confirm[ing] our availability for a meeting on July 26 at 10 a.m. in our offices." *Id.*

**B.      Despite Agreeing To Meet, SanDisk Preempts That Meeting By Filing A Declaratory Judgment Action.**

Rather than prepare for that meeting, SanDisk instead prepared for litigation. On July 13, 2007, SanDisk filed its declaratory-judgment complaint seeking a declaration that SanDisk has not infringed the '457 and '080 patents and that these patents are invalid. Complaint. SanDisk alleged that by virtue of Mr. Chaperot's May 11, 2007 letter "Lucent asserted the '457 and '080 patents against SanDisk" and "identified twenty-four SanDisk digital music players that Lucent alleged require a license to these patents." Complaint, ¶ 17. And although the parties' correspondence reflects that SanDisk accepted Alcatel-Lucent's offer to have a licensing discussion on July 26, 2007, SanDisk averred that it "has advised Lucent that its digital music players do not infringe the '457 or '080 patents, and therefore there is no need for SanDisk to obtain a license from Lucent in connection therewith." Complaint, ¶ 20.

**C.      SanDisk Rebuffs Defendants' Post-Filing Attempts To Resolve This Matter After The Adverse Microsoft Judgment.**

As SanDisk discusses in its Complaint, Lucent litigated an action against Microsoft in the United States District Court for the Southern District of California for infringement of the '457 and '080 patents. In February 2007, a jury returned a verdict that both patents were valid and infringed by Microsoft's MP3 audio-compression technology. *See* Mercer Decl., Ex. C. Just weeks after SanDisk filed its declaratory-judgment complaint here, however, the district court in the *Microsoft* action issued an amended final judgment based on post-trial motion practice. *See* Mercer Decl., Exs. D, E, F. The *Microsoft* court held the '457 patent valid and enforceable, consistent with the jury

1  verdict, but entered judgment of noninfringement. *See* Mercer Decl., Exs. E, F. As for the '080

2  patent, the *Microsoft* court held the patent valid, enforceable, and infringed, but entered judgment in

3  favor of Microsoft on the grounds that a third party, Fraunhofer, co-owns the patent, depriving

4  Lucent of standing and providing Microsoft a license under a pre-existing agreement with

5  Fraunhofer. *See* Mercer Decl., Exs. E, F.

6       Both parties to the *Microsoft* action subsequently filed notices of appeal. *See* Mercer Decl.,

7  Exs. G, H. The issues that Lucent will appeal include the judgments of co-ownership, lack of

8  standing, and license as to the '080 patent, and the judgment of noninfringement as to the '457

9  patent. *See* Mercer Decl., Ex. G. In addition, Microsoft has indicated that the issues it will raise on

10  appeal include the proper claim construction, validity, and enforceability of both the '457 patent and

11  '080 patent. *See* Mercer Decl., Ex. H.

12       Because the issues on appeal in the Microsoft litigation largely overlap with — and may be

13  dispositive of — the issues raised by SanDisk's declaratory-judgment complaint, Defendants

14  contacted SanDisk soon after the San Diego court issued its amended judgment to propose a

15  voluntary dismissal of this action without prejudice pending resolution of the *Microsoft* appeal.

16  Lucent additionally agreed not to bring suit against SanDisk or its customers on the '457 or '080

17  patents in the interim, and to afford SanDisk an opportunity — upon the Federal Circuit's decision

18  — to file a new declaratory-judgment action before Lucent brings any action for infringement on the

19  '457 or '080 patent. SanDisk, however, rejected this proposal, and instead demanded that

20  Defendants stipulate to entry of judgment in SanDisk's favor based upon the district court's

21  judgment in the *Microsoft* litigation.

22      **D.**    **Defendants Move To Dismiss This Action.**

23       Unable to secure SanDisk's agreement to voluntarily dismiss this case, on October 12, 2007

24  Defendants filed a motion to dismiss this action without prejudice or, in the alternative, stay this

25  action pending resolution of the *Microsoft* appeal. Defendants' Motion To Dismiss Without

26  Prejudice Or Stay Pending Resolution Of Appeal In Related Case ("Defendants' Motion To

27  Dismiss"). Because that motion does not technically fall within one of the categories of motions that

28  may be filed in lieu of a responsive pleading under Fed. R. Civ. P. 12, Defendants also served and

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

filed a responsive pleading.  Answer And Counterclaim Of Lucent Technologies Inc. And Alcatel-Lucent, S.A. ("Answer And Counterclaim").  In that pleading, Lucent asserted a compulsory counterclaim against SanDisk for infringement of the '080 patent.  *Id.*  That counterclaim expressly recognizes, however, that the recent ruling in the *Microsoft* case, unless overturned on appeal, may preclude Lucent from proceeding with its claim.  *Id.*  Because Lucent has a basis to believe that SanDisk products practice at least one claim of the '080 patent, Lucent interposed this claim solely to avoid a later allegation that it had waived such a claim should it prevail in the *Microsoft* appeal.  Lucent continues to believe, however, that neither this claim nor SanDisk's declaratory-judgment claims should be litigated at the present time.  Lucent did not bring an infringement counterclaim on the '457 patent.

Two weeks after Defendants' filings, SanDisk filed its motion for summary judgment of noninfringement and a motion to dismiss Lucent's counterclaim under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  No discovery has yet been taken in this case.

### E.    The '457 and '080 Patents.

The two patents-in-suit are directed to fundamental audio-compression inventions.  Compression of an audio signal is necessary when the amount of data required (*i.e.,* number of bits or bit rate) to store or transmit the audio signal exceeds the capacity of the available media, such as digital cable television, internet links, or DVDs.  *See* Mercer Decl., Ex. I at ¶ 3.  The pioneering work of the inventors of these two related patents — the '080 patent claims priority to the earlier-filed '457 patent —exploited the new and emerging field of perceptual audio coding to allow compression of audio signals, such as music, by using models of human hearing to maximize the degree of compression while maintaining high levels of audio quality.  *Id.*  This work now forms the basis for many modern-day MP3 audio coders.  *Id.*  This fact is illustrated by the MP3 industry standard itself, which while not mandating any particular encoding scheme, provides a exemplary encoder that employs the inventions of both the '080 and '457 patents.  *Id.* at ¶ 4.

The '080 and '457 patents each describe and claim methods of encoding audio signals, but also include claims directed to aspects of compression systems other than encoding.  For instance,

the '080 patent expressly includes a claim to a ***decoder*** that is capable of decoding signals that have

been encoded according to the methods described in the '080 patent:

> 4. A *decoder for decoding a set of frequency coefficients* representing an audio signal, the decoder comprising:
>
> (a) *means for receiving the set of frequency coefficients having been encoded by*:
>
>> (1) converting a time domain representation of the audio signal into a frequency domain representation of the audio signal comprising the set of frequency coefficients;
>> (2) calculating a masking threshold based upon the set of frequency coefficients;
>> (3) using a rate loop processor in an iterative fashion to determine a set of quantization step size coefficients needed to encode the set of frequency coefficients, said set of quantization step size coefficients determined by using the masking threshold and an absolute hearing threshold; and
>> (4) coding the set of frequency coefficients based upon the set of quantization step size coefficients; and
>
> (b) means for converting the set of coefficients to a time domain signal.

*See* Mercer Decl., Ex. J.  And the '457 patent includes a claim to a "storage medium" that stores

audio that has been encoded according to the methods described in that patent:

> 10. A *storage medium* manufactured in accordance with a process comprising the steps of:
>
> (a)  processing an ordered time sequence of audio signals partitioned into a set of ordered blocks, each said block having a discrete frequency spectrum comprising a first set of frequency coefficients; and
>
> (b)  for each of said blocks:
>
>> (1)  grouping said first set of frequency coefficients into at least one group, each group comprising at least one frequency coefficient;
>> (2)  generating at least one tonality value, each group having an associated tonality value, said at least one tonality value reflecting the degree to which said time sequence of audio signals comprises tone-like quality;
>> (3) generating at least one noise masking threshold, each said at least one noise masking threshold being based upon at least one tonality value;
>> (4)  quantizing at least one frequency coefficient in said at least one group resulting in a set of quantized frequency coefficients, said quantizing based upon said at least one noise masking threshold;
>> (5)  applying a recording signal to said storage medium, said recording signal comprising signals representing said set of quantized frequency coefficients; and
>> (6)  recording said signal onto said storage medium.

1    *See* Mercer Decl., Ex. K.

2        **F.      SanDisk's MP3 Players Store And Decode Audio Files.**

3        SanDisk offers a series of MP3 players for sale to consumers.  *See* Declaration of Dr.

4    Nathaniel Polish ("Polish Decl.") at ¶ 3.  Although several of these players will play other types of

5    media files, SanDisk expressly markets these players as "MP3" players.  *Id.*  When a consumer

6    purchases at least some SanDisk digital audio players, the box contains the player itself, headphones,

7    a cable for connecting the player to a computer, a quick start guide and a CD that includes *encoding*

8    software and a User Guide.  *Id.* at ¶ 5.  When the player is turned on, the owner has the option of

9    selecting Music from a number of menu options.  *Id.* at ¶ 6.  For instance on the SanDisk e250

10   Rhapsody player, selecting the Music option brings up an additional menu with topics such as Play

11   All, Artists, Albums, Songs, Genres, Playlists, My Top Rated, Recordings, Rhapsody Channels, and

12   Music Options.  *Id.* at ¶ 7.  Selecting the Play All option results in play of the first of a number of

13   audio tracks, all of which are encoded in the MP3 format, pre-loaded on the player.  *Id.* at ¶¶ 8, 9.

14   Selecting any of the Artists, Albums, Songs, Genres options also lead the user to the same pre-

15   loaded audio tracks.  *Id.* at ¶ 8.  The Rhapsody Channel option directs the user to connect the player

16   to a computer in order to transfer a Rhapsody Channel.  *Id.* at ¶ 10.  Choosing Music Options allows

17   the user to modify the way in which audio files are played (for instance, randomly or in some

18   particular order).  *Id.* at ¶ 11.

19       SanDisk MP3 players support a variety of audio file encoding formats, including MP3, AAC,

20   RAX, WMA, and secure WMA.  *Id.* at ¶ 12.  SanDisk directs users to convert audio files in other

21   formats to one of the supported formats by, for instance loading the included Best Buy Digital Music

22   Store Media Player onto their computer and then using the Best Buy product to convert the files.  *Id.*

23   at 13.  The default format for "ripping" or encoding music from an audio CD audio using the

24   included Best Buy Digital Music Store Media Player was MP3.  *Id.* at 15.  SanDisk also informs

25   users that they may use a variety of other music software programs, including Napster, Yahoo!

26   Music Jukebox, Windows Media Player 10 and 11 and Rhapsody, to encode and transfer audio files

27   to SanDisk MP3 players and directs users to SanDisk's website for further information.  *Id.* at ¶¶ 15,

28   16.  Audio files may be encoded into MP3 format using these software packages, transferred and

Defendants' Opposition To SanDisk's Motion For        -7-        Case No. C 07-03618 JF
Summary Judgment

stored on the player in MP3 format, and the MP3 files decoded and played by SanDisk MP3 players. *Id.* at 14-17.

MP3 players, including the SanDisk players, operating this way will include either a digital signal processor ("DSP") with software or a computer chip with decoding software to decode audio files encoded using, for instance, the MP3 format. *Id.* at ¶ 19.

## <u>ARGUMENT</u>

SanDisk is not entitled to summary judgment of noninfringement for at least three reasons. First, no cognizable controversy exists between the parties amenable to summary adjudication. Second, even if an active controversy existed, it is inappropriate to decide such issues where the opposing party has been deprived of the opportunity to take discovery central to its opposition. Third, even without discovery, SanDisk's audio devices and their accompanying marketing materials demonstrate that there are genuine issues of material fact precluding summary judgment of noninfringement.

### A.    This Court Does Not Have Subject Matter Jurisdiction Over SanDisk's Claims.

Before proceeding to an evaluation of the merits of SanDisk's summary-judgment motion, this Court must first address whether a case or controversy exists within the meaning of the Declaratory Judgment Act, 28 U.S.C. § 2201(a). *See SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1377 (Fed. Cir. 2007). Federal courts are courts of limited jurisdiction and are presumed to lack jurisdiction in a particular case unless jurisdiction is conclusively demonstrated. *See Crossbow Tech., Inc. v. YH Tech.*, 2007 U.S. Dist. LEXIS 65646 (D. Cal. 2007) (citations omitted). Moreover, the Declaratory Judgment Act confers "unique and substantial discretion" upon district courts "in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). Here the burden is on SanDisk to demonstrate that declaratory judgment jurisdiction existed when it filed its complaint **and** that it has continued since. *Benitec Austl., Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1343 (Fed. Cir. 2007) (affirming finding of no jurisdiction based on events subsequent to filing of complaint).

Federal courts have jurisdiction to resolve actual controversies, and do not have jurisdiction to give advisory opinions on hypothetical facts. *Id.* at 1349. SanDisk must, therefore, show that

1   there is a substantial controversy, between it and Defendants, of sufficient immediacy and reality to
2   warrant the issuance of a declaratory judgment. *Id.* And more than a "scant showing [of
3   controversy is required] to provoke a declaratory judgment suit [because to do otherwise] would . . .
4   allow nearly anyone who so desired to challenge a patent." *Id.* at 1349. As will be shown in more
5   detail below, SanDisk cannot demonstrate that the scant contacts between Alcatel-Lucent and
6   SanDisk gave rise to an actual controversy before filing. Moreover, events subsequent to filing have
7   deprived SanDisk of even the scant showing of controversy available when its complaint was filed.
8   This Court should, therefore decline to entertain SanDisk's motion for summary judgment. *Id.*

9       **1.    The Scant Pre-Filing Interactions Between Alcatel-Lucent and SanDisk
            Are Insufficient To Create A Real And Immediate Controversy.**

10          Where, as here, there is no license, "declaratory judgment jurisdiction generally will not arise
11  merely on the basis that a party learns of the existence of a patent owned by another or even
12  perceives such a patent to pose a risk of infringement, without some affirmative act by the patentee."
13  *SanDisk*, 480 F.3d at 1381-2. Only if the patentee takes a position that puts the declaratory judgment
14  plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he
15  claims a right to do. *Id.* The Federal Circuit addresses such patentee behavior in *SanDisk,* but that
16  case demonstrates that such behavior does not exist here.

17          In *SanDisk*, the patentee sought a royalty based on specific, identified activity of SanDisk,
18  including a "thorough infringement analysis presented by seasoned litigation experts, detailing that
19  one or more claims of its patents read on one or more of SanDisk's identified products." *Id.* at 1382.
20  The patentee identified, on an element-by-element basis, how SanDisk's products infringed specific
21  claims, and the patentee's experts referred to ongoing infringing activity and the need for a license.
22  *Id.* In addition the patentee "gave SanDisk a packet of materials, over 300 pages in length,
23  containing, for each of [the] fourteen patents under discussion, a copy of the patent, reverse
24  engineering reports for certain of SanDisk's products, and diagrams showing a detailed infringement
25  analysis of SanDisk's products." *Id.* The Federal Circuit determined that the patentees activities
26  communicated "that it had made a studied and determined infringement determination," which
27  combined with SanDisk's determination that it "could proceed . . . without the payment of royalties"

1   was sufficient to create "a substantial controversy, between parties having adverse legal interest, of

2   sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (finding no

3   need for SanDisk to risk an infringement suit by cutting off licensing discussions).  No such

4   activities occurred here.

5          Alcatel-Lucent's letter merely made SanDisk aware of the existence of its patent portfolio

6   and of its desire to have licensing discussions.  *See* Mercer Decl., Ex. A.  That communication is not

7   enough to create subject-matter jurisdiction even if SanDisk subjectively perceived a risk of

8   infringement liability.  *SanDisk*, 480 F.3d at 1381.  Alcatel-Lucent made no concrete allegation of

9   infringement of either patent-in-suit by any SanDisk activity.  Indeed, Alcatel-Lucent declined an

10  invitation to make such an allegation and to provide the detailed analysis that created subject-matter

11  jurisdiction in *SanDisk*.  When SanDisk's litigation counsel asked "[i]f you are asserting

12  infringement of specific claims of U.S. Patent No. 5,341,457 and U.S. Reissue Patent No. Re.39,080,

13  please advise us of such claims and the particulars of the alleged infringement," Alcatel-Lucent went

14  no further than pointing out that "these patents were involved in a litigation against Microsoft" and

15  identifying the "specific claims [that] were found valid and infringed" in that litigation.  *See* Mercer

16  Decl., Ex. B.  Alcatel-Lucent did not suggest that the Microsoft litigation result impacted SanDisk's

17  products or activities or make any allegation of infringement, but rather "reiterate[ed] [Alcatel-

18  Lucent's] offer to initiate a business discussion."  *Id.*

19         SanDisk's pre-filing request, therefore, appears to be nothing more than an unsuccessful

20  attempt to lure Alcatel-Lucent into providing the same sort of "studied and determined infringement

21  determination" that the Federal Circuit held created jurisdiction in *SanDisk*.[2]  *SanDisk*, 480 F.3d at

22  1382.  But Alcatel-Lucent never provided information that would have put SanDisk in the position

23  of either pursuing arguably illegal behavior or abandoning that which it claimed a right to do.  *Id.*

24  Moreover, even though SanDisk agreed to a meeting at which it could have further understood

25

26         ────────────────────

27         [2] The *SanDisk* opinion issued on March 26, 2007, approximately 6 weeks before Alcatel-Lucent
           first contacted SanDisk.  *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372 (Fed. Cir.
           2007).

28

Defendants' Opposition To SanDisk's Motion For          -10-          Case No. C 07-03618 JF
Summary Judgment

Alcatel-Lucent's position — and perhaps understood that no real and immediate controversy existed — SanDisk went ahead and filed its complaint. The scant contacts between Alcatel-Lucent and SanDisk were insufficient to create a real and immediate controversy between the parties and this Court should not reward SanDisk's attempts to create a controversy where none existed. *Id.*

> ### 2. Post-Filing Events Demonstrate That No Real And Immediate Controversy Exists Between Alcatel-Lucent and SanDisk.

SanDisk's position regarding the existence of a real and immediate controversy is further weakened by post-filing events, at least with respect to the '080 patent. SanDisk asserts that this Court lacks subject-matter jurisdiction over Alcatel-Lucent's counterclaim for infringement of the '080 patent "because Lucent lacks standing, and has no legally protected interest in its counterclaim." *See* Plaintiff/Counterdefendant SanDisk Corporation's Motion To Dismiss Defendant Lucent Technologies Inc.'s Counterclaim (Motion to Dismiss") at 3. The basis for SanDisk's assertion is that the *Microsoft* court found that Lucent was one of two co-owners of the '080 patent, and could not, without joinder of the other co-owner seek to enforce the '080 patent. *Id.*

SanDisk's position regarding Lucent's ability to file a suit for infringement of the '080 patent undermines any argument that SanDisk might make in support of this Court's subject-matter jurisdiction over SanDisk's mirror-image '080 patent declaratory-judgment claims. As the Federal Circuit pointed out in *Benitec*, "[a] useful question to ask in determining whether an actual controversy exists is what, if any, cause of action the declaratory judgment defendant may have against the declaratory judgment plaintiff." *Benitec*, 495 F.3d at 1344. In order for subject-matter jurisdiction to exist, "'there must be an underlying legal cause of action that the declaratory defendant could have brought or threatened to bring.'" *Id.* (quoting *Microchip Tech. Inc. v. Chamberlain Group, Inc.*, 441 F.3d 936, 943 (Fed. Cir. 2006). Absent such an underlying claim, "'any adverse economic interest that the declaratory plaintiff may have against the declaratory defendant is not a legally cognizable interest sufficient to confer declaratory judgment jurisdiction.'" *Id.* Put another way, if Lucent cannot proceed with an infringement claim absent joinder of a third-party, then SanDisk cannot proceed with a mirror-image declaratory-judgment claim absent joinder of that party. Thus, because SanDisk alleges that Lucent cannot maintain an action for infringement

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

of the '080 patent, this Court should find that it has no subject-matter jurisdiction over SanDisk's '080 declaratory judgment claim.  *Id.*

> **B.**  **This Case Does Not Warrant Application Of Collateral Estoppel But Should Instead Be Dismissed Or Stayed.**

> **1.**  **Application Of Collateral Estoppel Against Alcatel-Lucent's Counterclaim Deprives SanDisk Of Standing.**

SanDisk argues that its MP3 players cannot infringe the '080 patent because SanDisk is licensed under the '080 patent.  *See* Plaintiff/Counterdefendant SanDisk Corporation's Motion For Summary Judgment ("SanDisk Motion") at 18.  SanDisk bases its license argument on the Amended Judgment in the *Microsoft* case, which held that the '080 patent was valid, enforceable, and infringed, but, nonetheless, entered judgment in favor of Microsoft on the grounds that a third party, Fraunhofer, co-owns the patent, depriving Lucent of standing and providing Microsoft a license under a pre-existing agreement with Fraunhofer.  *Id.*  SanDisk argues that it is covered under a similar pre-existing agreement.  *Id.*  SanDisk additionally asserts that *Microsoft* judgment acts to collaterally estop Alcatel-Lucent from disputing SanDisk's license defense, and also deprives this Court of subject matter jurisdiction over Alcatel-Lucent's compulsory counterclaim for infringement of the '080 patent.  *Id.* at 13.

This Court is not required to accept, and should not accept, SanDisk's position.  One of the purposes of collateral estoppel is promoting judicial economy.  *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979).  Here, accepting SanDisk's invitation has the potential to increase rather than decrease the demand for this Court's resources as both parties to the *Microsoft* action filed notices of appeal.  *See* Mercer Decl., Exs. G, H.  The very issue on which SanDisk bases its request for collateral estoppel is being addressed in a currently pending appeal.  If that appeal reverses the judgment of the *Microsoft* court, any judgment entered here on the basis of collateral estoppel will then need to be procedurally unwound.  Moreover, dismissing claims related to the '080 patent does nothing to resolve issues related to the '457 patent, a patent covering the same technology area.  Because the Federal Circuit will likely resolve the issue of ownership of the '080 patent, it would be more prudent for this Court to wait until the appeal is decided because, in the event that Alcatel-

1    Lucent prevails, this Court could resolve claims related to the '080 and '457 patents efficiently at the

2    same time.

3            Moreover, SanDisk's assertion of collateral estoppel is offensive rather than defensive.

4    *Parklane*, 439 U.S. at 329 (in offensive collateral estoppel, plaintiff seeks to prevent defendant from

5    re-litigating issues upon which it has previously lost).  In *Parklane*, the Supreme Court determined

6    that "offensive use of collateral estoppel will likely increase rather than decrease the total amount of

7    litigation."  *Id.* at 330.  The Supreme Court, therefore, held that when offensive collateral estoppel is

8    asserted, district courts "have broad discretion to determine when it should be applied."  *Id.* at 331.

9    Moreover, courts have inherent powers to control their dockets, and to stay litigation where

10   necessary to prevent "duplicative litigation, inconsistent results, and waste of time and effort by

11   itself, the litigants and counsel."  *Stern v. U.S.*, 563 F. Supp. 484, 489 (D. Nev. 1983) (citations

12   omitted).  And where, as here, an appeal could have a "profound effect" on the litigation, a stay,

13   rather than application of collateral estoppel, is appropriate.  *Id.*, *see also Pharmacia & Upjohn Co.*

14   *v. Mylan Pharms., Inc.*, 170 F.3d 1373, 1381 (Fed. Cir. 1999) (approving application of defensive

15   collateral estoppel but not addressing the use of offensive collateral estoppel and recognizing that

16   staying the application of collateral estoppel may be wiser in some cases).  This Court should,

17   therefore, stay application of collateral estoppel against Alcatel-Lucent pending resolution of the

18   appeal in the *Microsoft* litigation.

19                   **2.    This Court Should Exercise Its Discretion To Decline Jurisdiction Over**
                     **SanDisk's Declaratory Judgment Action To Avoid Piecemeal and**
20                   **Potentially Unnecessary Litigation.**

21           SanDisk's summary-judgment motion and its co-pending motion to dismiss raise the

22   potential for needlessly piecemeal and potentially unnecessary litigation even if this Court declines

23   to apply collateral estoppel against Lucent.  The pending Federal Circuit appeal in the *Microsoft*

24   action will resolve several issues central to SanDisk's declaratory judgment claims (and beyond the

25

26

27

28

1
2
3
4

licensing issue discussed above) that are potentially dispositive of this entire case.[3]   For example,
should the Federal Circuit decide in favor of Microsoft on its invalidity and/or unenforceability
arguments concerning the '457 and '080 patents, no dispute between the parties will remain for
adjudication here.

5
6
7
8
9
10
11
12
13
14
15

Moreover, even if the Federal Circuit fails to resolve entirely any claim or defense raised
here, guidance provided by the appellate decision will nevertheless bind and inform this Court.  For
example, resolution of the claim construction disputes presented by Microsoft on appeal — disputes
that the Federal Circuit considers *de novo* — will yield claim interpretations that bind the parties in
this action.  Any interim discovery, analyses, or rulings based on different claim interpretations (or
premises otherwise vitiated by the Federal Circuit's decision) will need to be revisited.  In sum, the
manifest danger of needless and/or duplicative litigation — particularly in the absence of any
demonstrable prejudice to SanDisk[4] — warrants dismissal of SanDisk's declaratory judgment action
without prejudice pending the Federal Circuit's resolution of the *Microsoft* appeal.  If, however, this
case proceeds in parallel to the *Microsoft* appeal, ***all*** of the resources that this Court and the parties
commit to litigating any issues resolved by the Federal Circuit will be needlessly squandered.

16
17
18
19

This Court has the discretion to dismiss SanDisk's claims.  *Wilton v. Seven Falls Co.*, 515
U.S. 277, 282 (1995) ("[D]istrict courts have broad discretion in determining whether and when to
entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies

20

---

21
22
23
24

[3] Defendants filed a motion to dismiss or stay SanDisk's declaratory-judgment claims
concurrently with the filing of their responsive pleading in this matter.  *See* Defendants' Motion
To Dismiss Without Prejudice Or Stay Pending Resolution Of Appeal In Related Case
("Defendants Motion to Dismiss").  That motion is scheduled for hearing on December 21, 2007.
The potential for piecemeal litigation arising out of SanDisk's motion for summary judgment
and its attempts to dismiss Lucent's counterclaim warrant consideration of Defendants'
arguments regarding dismissal or stay in the context of this opposition.  Defendants' arguments
are, therefore, summarized here and in Section B.3 below.

25
26
27
28

[4] Dismissal will inflict no prejudice on SanDisk, as the Defendants have agreed to refrain from
actively asserting infringement of the '457 and '080 patents by SanDisk products while the
*Microsoft* appeal is pending.  In addition, following the Federal Circuit's decision, the
Defendants will afford SanDisk an opportunity to re-file its declaratory judgment action before
initiating any litigation against SanDisk for infringement of those patents.

subject matter jurisdictional prerequisites."). Concerns for judicial efficiency can alone support dismissal of an otherwise jurisdictionally sound declaratory judgment claim. *See id*. at 288 ("In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration."). These tenets of declaratory judgment jurisprudence apply equally in patent cases. *See, e.g., Serco Serv. Co. v. L.P. & Kelley Co.*, 51 F.3d 1037, 1039 (Fed. Cir. 1995) ("The court must make a reasoned judgment whether the investment of time and resources will be worthwhile."); *see also L.E.A. Dynatech, Inc. v. Allina*, 49 F.3d 1527, 1530 (Fed. Cir. 1995) (affirming the district court's dismissal without prejudice in light of a pending appeal where the dismissal "preserved the resources of the court and parties by preventing further litigation on claims which might not survive [appeal]"). This Court should exercise its discretion so as to conserve its resources.

### C. In The Alternative, A Stay Of This Litigation Is Warranted Because Considerations of Judicial Economy Outweigh Any Possible Prejudice To SanDisk.

Alternatively, the benefits achieved by dismissal can largely be realized through a discretionary stay of these proceedings pending resolution of the *Microsoft* appeal. "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Accordingly, "[a] trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 2005). "This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court." *Id*. at 863-864.

Here, the same efficiencies that support dismissal of SanDisk's declaratory judgment claims support a stay of this action pending the outcome of the *Microsoft* appeal. As with dismissal, a stay will prevent needless litigation of issues that will be conclusively determined (or mooted) by the Federal Circuit's decision. At the same time, a stay will inflict no prejudice on SanDisk, as the

Federal Circuit will likely issue its ruling within a year and the Defendants agreed to refrain from actively asserting the '457 and '080 patents against SanDisk in the interim.  Accordingly, should this court elect not to dismiss SanDisk's declaratory judgment claims outright, this action should nevertheless be stayed while the *Microsoft* appeal is pending.  *See Wing Shing Prods. (BVI) Ltd. v. Simatelex Manu. Co.*, Case No. Civ. 1044 (RJH) (HBP), 2005 WL 912184 (S.D.N.Y. Apr 19, 2005), at *2-3 (staying patent declaratory judgment action pending resolution of Federal Circuit appeal concerning enforceability and ownership of the patent-in-suit).

### D.    This Case Is Not Ripe For Summary Adjudication.

#### 1.    Because There Has Been No Discovery, Defendants Lack Affirmative Evidence Necessary To Oppose SanDisk's Motion.

SanDisk filed its motion for summary judgment just two weeks after Defendants filed their Answer and Counterclaim.  No discovery has yet been taken because the parties have only just met and conferred as required under Fed. R. Civ. P. 26(f).  As a result, Defendants have been unable to discover any information about SanDisk's MP3 players other than which is publicly known.  Of more relevance to its opposition to SanDisk's motion is Defendants inability to probe the factual averments contained in SanDisk's supporting declarations.  *See* Mercer Decl, Ex. K.  Without discovery of SanDisk's products and the bases for Mr. Bone's (SanDisk's declarant) declaration, Defendants' ability to provide evidence in opposition is unfairly constrained.

Fortunately, "Federal Rule of Civil Procedure 56(f) provides a device for litigants to avoid summary judgment when they have not had sufficient time to develop affirmative evidence." *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1000 (9th Cir. 2002).  Rule 56(f) entrusts district courts with the discretion to refuse an application for summary judgment or order a continuance to permit discovery to enable a party to respond:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, *the court may refuse the application for judgment or may order a continuance* to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

(emphasis added).  District courts should exercise their discretion to refuse an application for summary judgment or order a continuance to permit discovery to enable a party to respond to ensure that the parties have been given a reasonable opportunity to make their record complete before ruling

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

on a motion for summary judgment, particularly where, as here, a summary judgment motion is filed very early in the litigation. *See Burlington N. Santa Fe R.R. v. Assiniboine & Sioux Tribes of the Fort Peck Reservation,* 323 F.3d 767, 774 (9th Cir. 2003) (where summary judgment motion filed before a party can pursue discovery, district courts should freely grant Rule 56(f) motions). The Ninth Circuit has interpreted Supreme Court precedent as ***requiring*** district courts to grant Rule 56(f) motions where a party has not been afforded the chance to seek necessary discovery. *See Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001) ("Although Rule 56(f) facially gives judges the discretion to disallow discovery when the non-moving party cannot yet submit evidence supporting its opposition, the Supreme Court has restated the rule as requiring, rather than merely permitting, discovery 'where the non-moving party has not had the opportunity to discover information that is essential to its opposition.'") (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 n.5 (1986)). Other Circuits are in agreement. *See, e.g., Berkeley v. Home Ins. Co*., 314 U.S. App. D.C. 358, 68 F.3d 1409, 1414 (D.C. Cir. 1995) (describing "the usual generous approach toward granting Rule 56(f) motions"); *Wichita Falls Office Assoc. v. Banc One Corp*., 978 F.2d 915, 919 n.4 (5th Cir. 1992) (Rule 56(f)-based "continuance of a motion for summary judgment for purposes of discovery should be granted almost as a matter of course unless the non-moving party has not diligently pursued discovery of the evidence" (internal quotation marks and citation omitted)); *Sames v. Gable*, 732 F.2d 49, 52 (3rd Cir. 1984) (same).

Moreover, where a summary judgment motion is filed before or early in discovery, the rules applicable to the supporting documentation necessary for a Rule 56(f) motion are relaxed. Normally, a party requesting a continuance under Fed. R. Civ. P. 56(f) "must show (1) that [it] ha[s] set forth in affidavit form the specific facts that [it] hope[s] to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are 'essential' to resist the summary judgment motion." *See California ex rel. Cal. Dep 't of Toxic Substances v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998). Where, however, there has been no discovery, the party seeking discovery and a continuance under Rule 56(f) is not required to provide "great specificity as to the kind of discovery likely to turn up useful information, as the ground for such specificity has not yet been laid." *Burlington,* 323 F.3d at 774.

Defendants' Opposition To SanDisk's Motion For Summary Judgment          -17-          Case No. C 07-03618 JF

To fully respond to SanDisk's motion for summary judgment, Defendants need discovery on at least the following topics:

- Source code for the audio decoding software incorporated in SanDisk's MP3 players;

- source code for the audio encoding software provided with SanDisk's MP3 players

- the design, operation, marketing and sales of SanDisk's MP3 players;

- the methods and operation by which SanDisk's MP3 players store, decode and playback previously encoded audio;

- the encoding of audio files stored on SanDisk's MP3 players prior to purchase by consumers;

- whether any of SanDisk's MP3 players have the capability to encode audio files;

- the compatibility of SanDisk's MP3 players with MP3, AAC, RAX, WMA and secure WMA audio coding formats

- the MP3, AAC, RAX, WMA and secure WMA audio coding formats used to encode audio files for storage, decoding and playback on SanDisk's MP3 players;

- the conformance of SanDisk's MP3 players to the MP3 industry standard;

- the use of SanDisk MP3 players;

- the substantial noninfringing uses of SanDisk's MP3 players;

- the use, provision, and incorporation of third-party media software such as Microsoft's Windows Media Player, Real Networks' Rhapsody, Apples ITunes, and Yahoo! Music Jukebox;

- SanDisk's marketing and product documentation;

- SanDisk's knowledge of the patents-in-suit; and

- SanDisk's knowledge of the encoding processes of third-party encoder software.

*See* Affidavit Of William C. Mercer In Support Of Defendants' Motion For Discovery Under Fed. R. Civ. P. 56(F) ("Mercer Affidavit").

Because SanDisk's motion for summary judgment was filed so early in this litigation, Defendants hereby move under Fed. R. Civ. P. 56(f) for discovery sufficient to oppose SanDisk's summary-judgment motion.  In support of this motion, Defendants have provided the Mercer

1
2
3
4
5
6
7

Affidavit describing the specific facts they "hope to elicit from further discovery," and the reasons why they believe these facts "are 'essential' to resist the summary judgment motion." *See Campbell*, 138 F.3d at 779.  Because no discovery has been taken, Defendants cannot be certain that these facts exist but believe that they do based on the factual averments contained in the Bone Declaration filed in support of SanDisk's summary-judgment motion.  *Id.*  Thus, Defendants have met their obligations under Rule 56(f) and this Court should, at a minimum, allow Defendants to take the discovery necessary to oppose SanDisk's motion.  *Metabolife*, 264 F.3d at 846.

8
9

**E.    Summary Judgment Is Inappropriate Where Genuine Issues Of Material Fact Exist.**

10
11
12
13
14
15
16
17

Summary judgment is inappropriate unless "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  *Caterpillar, Inc. v. Sturman Indus., Inc.*, 387 F.3d 1358, 1373 (Fed. Cir. 2004); *Continental Can Co. USA, Inc. v. Monsanto Co.*, 948 F.2d 1264, 1265 (Fed. Cir. 1991)(citations omitted).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id.*  "Summary judgment is not appropriate if the non-moving party presents evidence from which a reasonable jury could resolve the material issue in his or her favor."  *Online Policy Group v. Diebold, Inc.*, 337 F.Supp.2d 1195, 1199 (N.D. Cal. 2004).

18
19
20
21
22
23
24
25

Literal infringement requires that "the accused device contains every limitation in the asserted claims."  *Mas-Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 1211 (Fed. Cir. 1998).  This determination is a fact issue and as a result, "a district court must approach a motion for summary judgment of … non-infringement with a care proportioned to the likelihood of its being inappropriate."  *SRI Int'l. v. Matsushita Elec. Corp. of America*, 775 F.2d 1107, 1116 (Fed. Cir. 1985).  Here, SanDisk's motion for summary judgment of non-infringement must be denied if a reasonable jury could conclude that SanDisk's  product meets each and every element of the asserted claims of the '080 and '457 patents.

26

**1.    SanDisk Is Not Entitled To Summary Judgment Of No Direct Infringement Of The '080 Patent.**

27
28

SanDisk asserts that it is entitled to summary judgment of noninfringement of the '080 patent because every independent claim of the '080 patent allegedly requires encoding.  *See* SanDisk

1

2

3

Motion at 14.  According to SanDisk, Defendants cannot demonstrate that SanDisk's MP3 players perform all of the steps of any claim of the '080 patent because its MP3 players do not encode audio files.  *Id* at 18.

4

5

6

7

8

9

Contrary to SanDisk's assertion, the '080 patent is not limited to encoding claims.  Claim 4 of the '080 patent claims a ***decoder*** that is capable of decoding signals that already have been encoded patented methods.  SanDisk does not dispute that its MP3 players decode and play MP3 files encoded using Windows Media Player 10 and 11.  And a jury has already found that Windows Media Player 10 and 11 encode MP3 files according to the patented method.  Accordingly, at least a genuine issue of material fact exists to prevent summary judgment of noninfringement.

10

Claim 4 provides as follows:

11

12

4.  A decoder for decoding a set of frequency coefficients representing an audio signal, the decoder comprising:

13

(a) means for receiving the set of frequency coefficients having been encoded by:

14

15

16

17

18

19

(1) converting a time domain representation of the audio signal into a frequency domain representation of the audio signal comprising the set of frequency coefficients;
(2) calculating a masking threshold based upon the set of frequency coefficients;
(3) using a rate loop processor in an iterative fashion to determine a set of quantization step size coefficients needed to encode the set of frequency coefficients, said set of quantization step size coefficients determined by using the masking threshold and an absolute hearing threshold; and
(4) coding the set of frequency coefficients based upon the set of quantization step size coefficients; and

20

(b) means for converting the set of coefficients to a time domain signal.

21

*See* Mercer Decl., Ex. J.

22

23

24

25

26

27

28

The *Microsoft* jury returned a verdict that the '080 patent was valid and infringed by Microsoft's MP3 audio-compression technology.  *See* Mercer Decl., Ex. C.  The district court in the *Microsoft* action subsequently issued an amended final judgment that held the '080 patent valid, enforceable, and infringed, but entered judgment in favor of Microsoft on the grounds that a third party, Fraunhofer, co-owns and licensed the patent.  *See* Mercer Decl., Exs. E, F.  Thus, the jury's conclusions and acceptance of expert testimony regarding infringement provided at trial were not disturbed in the amended judgment.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

At trial, Lucent's expert, Dr. Jayant, testified that Microsoft's Windows Media Player 10 and 11 infringed claim 1 of the '080 patent because those products practiced all of the steps of claim 1 when encoding MP3 files.  *See* Mercer Decl., Ex. I at ¶ 6.  Dr. Jayant explained that his infringement analysis also applied to claim 4 of the '080 patent because claim 4 is simply an apparatus for decoding frequency coefficients that are generated by the encoder of claim 1.  *Id.* at ¶¶ 7, 8.  Dr. Jayant also explained that the claim 4 decoder can perform the decoding function using a digital signal processor ("DSP") or a computer chip.  *Id.* at ¶ 8.  Thus, computer or DSP-based devices that can decode MP3 files encoded using Windows Media Player 10 or 11 meet all of the elements of claim 4 of the '080 patent, and infringe that claim.  *Id.* at ¶ 9.

Dr Polish, an expert in computing devices, examined two different SanDisk MP3 players. *See* Polish Decl. at ¶ 4.   He determined that the SanDisk MP3 players support a variety of audio file types, including MP3, AAC, RAX, WMA, and secure WMA.  *Id.* at ¶ 12.  Dr. Polish also determined that the SanDisk players are capable of decoding and playing MP3 files that were made using the same Windows Media Player 10 and 11 that both Dr. Jayant and a jury found perform the claimed method steps.  *Id.* at ¶ 14.  Because the SanDisk MP3 players include either a digital signal processor ("DSP") with software or a computer chip with decoding software to decode MP3 files, *Id.* at ¶ 19, the tested SanDisk MP3 players include all of the limitations of claim 4 of the '080 patent.

A reasonable jury could, therefore, find that SanDisk's MP3 players infringe at least claim 4 of the '080 patent.  Accordingly, SanDisk's motion for summary judgment of no direct infringement of the '080 patent must be denied.  *Online Policy Group*, 337 F.Supp.2d at 1199.

## 2.    SanDisk Is Not Entitled To Summary Judgment Of No Direct Infringement Of The '457 Patent

SanDisk also asserts that it is entitled to summary judgment of noninfringement of the '457 patent because every independent claim of the '457 patent requires encoding.  *See* SanDisk Motion at 14.  According to SanDisk, Defendants cannot demonstrate that SanDisk's MP3 players perform all of the steps of any claim of the '457 patent because its MP3 players do not encode audio files.  *Id* at 18.  But as with the '080 patent, the '457 patent is not so limited.  The '457 patent includes a

claim to a "storage medium" that stores audio that has been encoded according to the method described in that patent:

> 10.  A storage medium manufactured in accordance with a process comprising the steps of:
>
> (a)  processing an ordered time sequence of audio signals partitioned into a set of ordered blocks, each said block having a discrete frequency spectrum comprising a first set of frequency coefficients; and
>
> (b)  for each of said blocks:
>
>> (1)  grouping said first set of frequency coefficients into at least one group, each group comprising at least one frequency coefficient;
>> (2)  generating at least one tonality value, each group having an associated tonality value, said at least one tonality value reflecting the degree to which said time sequence of audio signals comprises tone-like quality;
>> (3) generating at least one noise masking threshold, each said at least one noise masking threshold being based upon at least one tonality value;
>> (4)  quantizing at least one frequency coefficient in said at least one group resulting in a set of quantized frequency coefficients, said quantizing based upon said at least one noise masking threshold;
>> (5)  applying a recording signal to said storage medium, said recording signal comprising signals representing said set of quantized frequency coefficients; and
>> (6)  recording said signal onto said storage medium.

*See* Mercer Decl., Ex. K.

It is undisputed that SanDisk's MP3 players store encoded audio files.  *See* SanDisk Motion at 5-6.  And, SanDisk MP3 players ship with included MP3 audio tracks.  *See* Polish Decl. at ¶ 9. Moreover, SanDisk directs users to convert audio files to formats such as MP3 and to transfer those encoded files to its MP3 players for play back.  *Id.* at ¶ 13.  SanDisk also informs users that they may use a variety of other music software programs, including Napster, Yahoo! Music Jukebox, and Rhapsody, to encode and transfer audio files to SanDisk MP3 players.  *Id.* at ¶¶ 16, 17.  And at least some of these encoders use the MP3 format.  For instance, the default encoder in the Best Buy Digital Music Store Media Player encodes music from an audio CD using the MP3 format.  *Id.* at ¶ 15.  Defendants, however, cannot determine if the proprietary coding formats used to encode audio files for storage on SanDisk's MP3 players use the methods described in the '457 patent, because there has been no discovery in this matter.  Importantly, Lucent has not asserted any claim of infringement of the '457 patent in this action.  Rather, SanDisk seeks a declaratory judgment of

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

noninfringement for presumably all of its activities and products.  Defendants are entitled to discovery to test SanDisk's blanket assertions that it does not practice any claim of this patent. Accordingly, this Court should deny SanDisk's motion, or at a minimum, order SanDisk to provide necessary and complete discovery and continue the briefing on SanDisk's motion until discovery is complete.  *Metabolife*, 264 F.3d at 846.

> ### 3.    SanDisk Is Not Entitled To Summary Judgment Of No Indirect Infringement.

SanDisk alleges that it is not liable for indirect infringement, either contributory or by inducement, because (1) Defendants cannot prove that SanDisk's MP3 players directly infringe either the '080 or '457 patent, (2) SanDisk's MP3 players are "staple articles of commerce with substantial noninfringing uses," (therefore no contributory infringement) and (3) Defendants cannot prove that SanDisk had knowledge of the '080 and '457 patents and an intent to cause infringement (no inducement).  *See* SanDisk Motion at 19-23.  SanDisk's assertions regarding direct infringement are incorrect as explained in Sections E.1 and E.2 above.[5]  SanDisk's assertion that its MP3 players are "staple articles of commerce with "substantial noninfringing uses" and its "lack of intent to infringe" argument are based on its erroneous interpretation of the scope of the *Microsoft* litigation.

For instance, SanDisk asserts that its MP3 players are not specially adapted to infringe and have substantial noninfringing uses because they decode and play music encoded using coders found not to infringe the patents-in-suit.  *Id.* at 22.  Similarly, SanDisk asserts that it cannot have the intent to infringe because it directs its customers to encoders found not to infringe the patents-in-suit. Contrary to SanDisk's assertions, the *Microsoft* litigation addressed infringement of the patents-in-suit only by MP3 encoding in Windows Media Player.  *See* Mercer Decl, Ex. C.  The *Microsoft*

---

[5] SanDisk also contends that "Lucent has not asserted that the use of any . . . encoding or media software [other than Windows Media Player] constitutes infringement of either of the patents in suit.  To the contrary, in asserting its patents against SanDisk, Lucent only identified use of Microsoft's WMP as resulting in any form of infringement."  *See* SanDisk Motion at 20.  This misrepresents the parties pre-suit communications.  As discussed in Section A.1 above, Alcatel-Lucent did not make *any* infringement assertions regarding SanDisk's products before this suit was filed.  In fact, Alcatel-Lucent declined SanDisk's invitation to make such an assertion.

litigation did not address whether WMA, secure WMA, AAC, RAX, or any of the encoders supported by SanDisk's MP3 players infringe the patents-in-suit. SanDisk's assertions are, therefore, without merit.

Moreover, SanDisk supports its claim of no indirect infringement through blanket assertions regarding the nature and function of its MP3 players, its knowledge of the patents-in-suit, and its intent to infringe. Defendants are entitled to test SanDisk's blanket assertions regarding no indirect infringement. Accordingly, this Court should deny SanDisk's motion, or at a minimum, order SanDisk to provide necessary and complete discovery and continue the briefing on SanDisk's motion until discovery is complete. *Metabolife*, 264 F.3d at 846.

**<u>CONCLUSION</u>**

For all of the foregoing reasons, the Defendants respectfully request that this Court to (1) dismiss or stay SanDisk's declaratory judgment complaint for lack of standing, (2) dismiss or stay SanDisk's declaratory judgment complaint pending resolution of the *Microsoft* appeal, (3) order the discovery needed by Defendants to oppose SanDisk's summary-judgment motion, or (4) deny SanDisk's summary-judgment motion.

DATED: November 9, 2007

By: _____/s/_____

Jenny N. Lee (Bar No. 247684)
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California 94104-1501
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

*Attorney for Defendants*
*Lucent Technologies Inc.*
*and Alcatel-Lucent, S.A.*