# EXHIBIT A

*Mutual Non-Disclosure Agreement*

This MUTUAL NON-DISCLOSURE AGREEMENT ("Agreement"), effective as of the date upon which the last party hereto executes the Agreement in the spaces provided hereinbelow, is between SanDisk Corporation, a Delaware corporation having an office at 601 McCarthy Blvd., Milpitas, California USA, and Alcatel Lucent, a corporation organized under the laws of France, having a principle office at 54 rue la Boétie Paris 75008, France (Alcatel-Lucent). The parties have entered into discussions concerning the evaluation, settlement and/or resolution of any potential claims, disagreements and/or disputes regarding patents and/or other matters (the "Discussions") and, to further these ends, a party (the "Discloser") may disclose Confidential Information (as defined below) to the other party (the "Recipient").

1. "Confidential Information" shall mean all documents (including claim charts), memoranda, statements (including oral statements), summaries, analyses, legal conclusions and the like relating to a party's patents, products of a party, evaluation of the need for a license, proposed license terms, acceptance/rejection of such proposed license terms, and sales/financial information, that is disclosed to Recipient or is otherwise learned by Recipient in the course of the Discussions, and that has been identified as being proprietary and/or confidential or that by the nature of the circumstances surrounding the disclosure or receipt ought to be treated as proprietary and confidential.

2. Each party agrees that all Confidential Information of the other party shall (a) remain the secret and confidential property of Discloser which the Recipient will hold and protect in secrecy and confidence using all reasonable precautions including, but not limited to, using precautions no less stringent than those employed by the Recipient to protect its own Confidential Information but in no event less than a reasonable degree of care; (b) not be used for any purpose other than the Discussions; (c) not be disclosed to any person other than those employees (including employees of Subsidiaries, as such term is defined hereinbelow) or consultants of the Recipient who have a need to know the Confidential Information (and the Recipient shall be responsible for any breach of this Agreement by any of them); and (d) not be recorded or copied except to the extent specifically authorized by the Discloser in writing. In addition, without prior written consent of the other party, neither party will disclose the fact that the Discussions or negotiations are taking place between the parties or any of the terms, conditions or other facts with respect thereto.

The disclosure period under this Agreement shall remain in effect for a period commencing upon the effective date and continuing for six (6) months thereafter, unless terminated by either party in writing. Unless the parties otherwise agree in writing, the confidentiality obligations and use provisions hereunder shall remain in full force and effect for a period of five (5) years from date of first disclosure of such Confidential Information during the disclosure period hereunder.

3. The restrictions set forth above shall not apply to information that the Recipient can establish (a) is generally known within the industry at the time of its disclosure; (b) is lawfully received by the Recipient from a third party not bound in a confidential relationship to the Discloser; (c) was already in the Recipient's possession without a duty of confidentiality at the time such information was disclosed by the Discloser to the Recipient; or (d) was independently developed by the Recipient without use of the information disclosed under this Agreement. If a portion or aspect of the Confidential Information becomes generally known, only that portion or aspect shall not be governed by this Agreement and all other aspects of the Confidential Information shall remain subject to the provisions of this Agreement.

4. The Recipient shall destroy or return to the Discloser all Confidential Information (including, without limitation, any copies, extracts or other reproductions in whole or in part of such Confidential Information) within ten (10) days of any request by the Discloser and the officer of the Recipient supervising such destruction shall certify in writing to the Discloser that such destruction occurred.

5. Subject to Section 6, nothing in this Agreement shall (a) impair either party's right to procure, make or market products or services now or in the future or to use its general knowledge, skills and experience within the scope of its business and without use of the other party's Confidential Information or (b) prohibit or limit either party's use of general ideas, concepts, know-how, methods, techniques, skills, knowledge and experience that were gained, used or developed in connection with the Discussions.

6. The Discloser agrees that it has the right to disclose the Confidential Information to the Recipient. Otherwise, all information is provided "as is" and without any warranty, express, implied or otherwise, regarding its accuracy or performance. By disclosing Confidential Information hereunder, the Discloser neither grants nor implies any license to the Recipient under any patent, copyright, trademark, mask work protection right or any other intellectual property right.

7. If a Recipient becomes compelled by law or court order to disclose Confidential Information of the Discloser, the Recipient will provide the Discloser with prompt notice of such requirement so the Discloser may seek a protective order or other appropriate remedy. If such protective order or other remedy is not obtained, the Recipient agrees to furnish only that portion of the Confidential Information that it is advised by legal counsel is required by applicable law or court order, and such disclosure will not result in any liability hereunder.

8. The parties agree that, subject to Rule 408 of the Federal Rules of Evidence for United States Courts and Magistrates: (a) the Confidential Information is provided for purposes of settlement and negotiations; (b) the referenced documents and information are not to be considered a complete analysis of any patent by either party and each party reserves the right to revise any

1

Confidential Information without prejudice; (c) the Confidential Information is not to be construed as a representation of the overall scope and applicability of the subject claims of any patent; (d) neither party is limiting its position to any statements or positions appearing in the Confidential Information; and (e) evidence of conduct or statements made in the course of any the discussions (including the existence of such conduct, statements, or discussions) shall be inadmissible in any proceeding for any purpose. This provision shall survive the termination or expiration of this Agreement indefinitely.

9. The Recipient certifies that none of the Discloser's Confidential Information, or any portion thereof, will be exported to any country in violation of any applicable export control laws or regulations.

10. Each party acknowledges that damages for improper disclosure of Confidential Information may be irreparable; therefore, the injured party is entitled to seek equitable relief, including injunction and preliminary injunction, in addition to all other remedies available to it.

11. This Agreement will not be assignable or transferable by either party without the prior written consent of the other party. Notwithstanding anything in this Section to the contrary, all of a party's right, title and interest in this Agreement and any obligations incurred by such party hereunder may be assigned to any Subsidiary (as defined herein below) of such party, or any direct or indirect successor to all or a portion of the business of that party or any of its Subsidiaries, which successor shall thereafter be deemed substituted for purposes of this Agreement as the Party hereto, effective upon such assignment. For purposes of this Agreement "Subsidiary" means a corporation or other legal entity (i) the majority of whose shares or other securities entitled to vote for election of directors (or other managing authority) is now or hereafter controlled by such company either directly or indirectly; or (ii) which does not have outstanding shares or securities but the majority of whose ownership interest representing the right to manage such corporation or other legal entity is now or hereafter owned and controlled by such company either directly or indirectly; but any such corporation or other legal entity shall be deemed to be a Subsidiary of such company only as long as such control or ownership and control exists.

12. This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof and may only be amended by a writing signed by both parties. If any provision of this Agreement is found invalid or unenforceable under any applicable law, such invalidity or unenforceability shall not affect the validity or enforceability of the remaining portions of this Agreement.

13. Each Party intends that a facsimile of its signature printed from an unaltered scanned version of its original signature such as by a receiving facsimile machine or a printer printing an unaltered Portable Document Format (PDF) file supplied by the Party be regarded as an original signature and agree that this Agreement can be executed in counterparts.

14. This Agreement will be governed by and construed in accordance with the laws of the State of California, United States of America, without regard to its rules regarding conflicts of law. 15. This Agreement is without prejudice to the Parties' respective rights, remedies and defenses in connection with the litigation now pending between them in the United States District Court for the Northern District of California, San Jose Division (the "Court"), entitled *SanDisk Corporation v. Lucent Technologies Inc., et. al*, Civil Action No. C07-03618 (the "Lawsuit"). Alcatel-Lucent further agrees: a) not to contest service of the complaint on Alcatel-Lucent or Lucent Technologies, Inc., b) not to contest jurisdiction in the United States District Court for the Northern District of California over the claims in the Lawsuit, and c) not to contest that, as claimed by SanDisk in the Lawsuit, a dispute existed between the Parties sufficient to support an action for declaratory judgment at the time SanDisk filed its complaint in the Lawsuit.

**IN WITNESS WHEREOF**, the parties have executed this Agreement on the respective dates entered below.

SANDISK CORPORATION

By: _[signature]_

Name: _E. Earle Thompson_

Title: _Chief IP counsel_

Date: _11-12-2007_

ALCATEL LUCENT

By: _[signature]_

Name: _Donald P. Pivecka_

Title: _Vice President Licensing_

Date: _07-Sept-2007_

2